EX PARTE PHILLIP M. FIRMIN.

No. 908. Decided November 2, 1910.

Rehearing Denied November 23, 1910.

1.—Habeas Corpus—Bail—Mandate—Practice on Appeal.

The Court of Criminal Appeals has no power to reverse a habeas corpus, on appeal, where bail is denied in a capital case, and direct by mandate the lower court in a certain way to a further investigation of the case; the mandate should issue to the officer holding the prisoner, commanding him either to discharge relator, or hold him in custody. Ramsey, Judge, dissenting

**2.—Same—Practice on Appeal—Case Stated.**

Where relator was indicted for murder in the court below, and sued out a writ of habeas corpus, and the State offered the indictment and the capias of arrest and closed its case, and the relator offered no testimony; whereupon the court below denied bail, the Court of Criminal Appeals will admit relator to bail and issue its mandate to the officer holding relator in custody to release him on bail. Ramsey, Judge, dissenting.

**3.—Same—Burden of Proof—Bail—Capital Offense.**

An indictment for murder is not of itself evidence that the relator is guilty of a capital offense, and where he seeks bail under habeas corpus the burden of proof is upon the State to establish a nonbailable case, otherwise the relator must be granted bail; and where nothing but the indictment and a capias was introduced in the court below the relator will be admitted to bail on appeal.

Appeal from the District Court of Hill. Tried below before the Hon. W. C. Wear.

Appeal from a habeas corpus proceeding denying bail in a capital case.

The opinion states the case.

*Vaughan & Hart* and *W. W. Ballew* and *Ivy, Hill & Greenwood,* for relator.—On the question that the burden of proof is on the State in habeas corpus proceedings for bail in capital cases: Ex parte Newman, 38 Texas Crim. Rep., 164; Ex parte Arthur, 47 S. W. Rep., 365.

*John A. Mobley,* Assistant Attorney-General, and *A. M. Frazier,* County Attorney, for the State.—Where appeal is taken from a habeas corpus denying bail and there was no evidence in the record by which the Appellate Court could fix bail, the judgment should be reversed: Code Crim. Procedure, article 905; Ex parte Brown, 63 Ala., 187.

On question of burden of proof: 6 Ency. Ev., 347; 22 L. R. A., 678; Hight v. U. S., Morris (Ia.), 407; Ex parte Bishop, 61 S. W. Rep., 308.

McCORD, JUDGE.—This is a companion case to Ex parte Phillip M. Firmin No. 907, this day decided in an opinion by Judge Davidson, reversing the judgment of the court below and granting bail. The facts are the same, and for the reasons stated in that opinion this case is reversed and bail fixed in the sum of four thousand dollars. Upon the execution of bond in the terms required by law, the sheriff will release relator.

*Bail granted.*

Ramsey, Judge, dissents.

### ON REHEARING.

#### November 23, 1910.

McCORD, JUDGE.—At a former day of this term of court the judgment of the lower court was reversed and bail granted the relator,

Judge Ramsey dissenting, and in his dissent holds that the case should be reversed with directions to the trial court to proceed to hear the evidence in the case. The State has filed a motion for rehearing asking that the majority opinion be set aside and the judgment of the lower court be either affirmed, or, if reversed, be certified below with directions to proceed to hear the testimony. In view of the dissenting opinion by Judge Ramsey, we have thought it best in overruling the motion for rehearing to give our reasons for reversing the judgment and admitting the relator to bail. Judge Ramsey's opinion proceeds upon the idea that the orders of this court in a habeas corpus proceeding acts upon the District Court below and that the judgment or mandate must be transmitted through the medium of the District Court hearing the writ as in other cases of appeal. This, to our minds, is a mistaken view of the law. The right of appeal in cases of habeas corpus in this State, is dependent upon and regulated solely by statute and when this court acts upon a writ of habeas corpus, whether granted by this court originally or whether upon appeal, the mandate is not directed or transmitted to the inferior tribunal, but by the terms of the statute itself it goes to the officer holding the party in custody. Article 924, Code Criminal Procedure, provides: "The judgment of the Court of Criminal Appeals (in habeas corpus cases) shall be certified by the clerk thereof to the officer holding the defendant in custody, or when he is held by any person other than an officer, to the sheriff of the proper county." Article 920 provides: "The Court of Criminal Appeals shall enter such judgment and make such orders as the law and the nature of the case may require, and may make such orders relative to the costs in the case as may seem right, allowing costs and fixing the amount, or allowing no costs at all." Article 921 provides: "The judgment of the Court of Criminal Appeals in appeals under habeas corpus shall be final and conclusive, and no further application in the same case can be made for the writ, except in cases specially provided for by law." Article 922 says: "If an officer holding a person in custody fails to obey the mandate of the Court of Criminal Appeals, he is guilty of an offense and punishable according to the provisions of the penal statutes of this State." Therefore, when we read these different provisions of the statute with regard to writs of habeas corpus and the trial thereof, in this court and the directions with regard to whom the mandate shall issue, we are constrained to hold that this court has no power to reverse a habeas corpus on appeal and direct by mandate the lower court to proceed in a certain way to further investigation of the case. In the case of Ex parte Erwin, 7 Texas Crim. App., 288, this court, speaking through Judge Clark, says: "It was never contemplated that this court would act upon such an appeal when it had no authority to enforce its judgment, nor when the illegal restraint complained of had altogether ceased; nor is this court authorized to remand a case

to an inferior judge with directions how to proceed in the enforcement of an original order made by him in chambers, and which may be left by the action of this court in full force and operation." This court has only such jurisdiction and powers as is conferred by the Constitution and laws of the State. The statute regulates how cases shall be appealed, how they shall be proceeded with in this court, when and to whom mandates shall issue, and we find nowhere in the statute any provision that authorizes this court in habeas corpus proceedings, whether here on appeal or originally, to issue a mandate to the inferior courts directing them how to proceed or what to do to develop the evidence in the trial of a case, or to direct them as to any mode of procedure, after the case has been adjudicated by this court, but it expressly commands this court and the clerk thereof under the directions of this court, to issue the mandate and order of this court to the officer holding the prisoner in custody either to discharge the relator, release him upon bail or to hold him in custody. It provides for the punishment of the officer for failing to obey the mandate of this court. Therefore, the orders of this court in habeas corpus cases can not be directed to the inferior tribunal, and neither can this court order the inferior tribunal to direct the officer holding the party in custody as to what disposition shall be made of the party, but the mandate and order of this court goes directly to the officer. We have searched in vain for any authority in the statute that would authorize this court upon the trial of habeas corpus, on appeal, to reverse the judgment of the trial court and to direct the lower court to proceed in a certain manner, or in any certain way to develop the case in the court below. What power has this court to direct the District Court to hear testimony in a habeas corpus case? The court below has seen fit to hear all the testimony it desires. It passed judgment upon the facts before it. This court says it is not satisfied with the way the case was proceeded with in the court below and says to the district judge, you have not proceeded to try this case in the right way and we now order you to proceed to take evidence in this case. But, says the district judge, in answer to such an order, I refuse to comply with the request of the higher court. Then where is the power of this court to compel the District Court to proceed? We have no authority to issue a mandamus to compel the district judge to do anything. The Constitution, article 5, section 5, says: "The Court of Criminal Appeals shall have appellant jurisdiction coextensive with the limits of the State in all criminal cases of whatever grade, with such exceptions and under such regulations as may be prescribed by law. The Court of Criminal Appeals and the judges thereof shall have the power to issue the writ of habeas corpus, and, under such regulations as may be prescribed by law, issue such writs as may be necessary to enforce its own jurisdiction." It has no power to issue writs of mandamus

to district judges to do or not to do any particular thing. See Ex parte Quesada, 34 Texas Crim. Rep., 116; also Darnell v. State, 24 Texas Crim. App., 6. The relator in the court below was indicted for murder; he sued out a writ of habeas corpus before the district judge. The case was set down for hearing, the State offered the indictment and the capias for his arrest and closed its case. Relator offered no testimony. The court denied bail. Section 11, article 1, of the Constitution, provides: "All prisoners shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident. . . ." It has been held that an indictment for murder is not of itself proof evident that the party is guilty of a capital offense. Therefore, this being true, the burden is upon the State to establish a case of murder in the first degree and can not be upon the relator. While it was formerly held that the burden was upon the relator, yet it has been the established practice for years that the burden is upon the State to make out a case and upon the failure of the State so to do, to grant bail. This court can only receive information in a judicial way. The record in this case is our only means of information. How do we know that the State had any proof to offer? It is but speculation on our part to say that the law does not give the State a "gambler's chance." The State had its opportunity; its officers in the court below are supposed to know what the law is and what the rules of procedure are; they are supposed to know what the rules of the law are and where the burden of proof rests in this character of cases, and to direct the district judge to proceed in a certain way, after the case is reversed in a habeas corpus case, to our minds, would be a reflection upon the legal intelligence of both judge and prosecuting officer. We feel that it would be dangerous to depart from the established rules of procedure as prescribed by the statute and before we are asked so to do, we must demand that we are shown the law that authorizes it. If Judge Ramsey's dissenting opinion is the law it would be found in our books. If it is not to be found in our books then it is not law. It may be that the relator is guilty of the foulest murder. It may be that the evidence, if developed, would show this fact, yet we have no judicial cognizance of it. The record as it comes before us does not disclose whether the relator is guilty of murder or manslaughter, or of what offense and simply because we feel that the trial court had not proceeded as it ought to have done, would not justify us in departing from the long line of adjudicated cases in this court and establish a precedent, the exercise of which and the enlargement of such a doctrine, would result in doing away with law and the prescribed mode and method of procedure and establishing a rule of making each case a specialty in the courts. This is a power the courts can not afford to take upon themselves. Courts may feel that justice has been thwarted, and feel aggravated because the courts below have not followed the law, and that this proceeding is not authorized by

law, and feel like attempting to justify it because it is so obnoxious, as presented, in its mildest and least injurious effect, but it may be said that illegitimate and unconstitutional practices get their first footing in this manner, and by silent approaches and slight deviations from legal modes of procedure. We prefer to stand by the law as it is written and as has been so often declared, we can not accede to a departure in this case because we may personally feel outraged at the action of the court below. It were better that a guilty person should occasionally go free than that this court should attempt to reach out and grasp arbitrary and unauthorized power. We can find no authority that will support the dissenting opinion of Judge Ramsey, and we still adhere to our former opinion that we can not do otherwise than grant bail and direct the mandate to the officer having the relator in custody.

The motion for rehearing will, therefore, be overruled.

*Overruled.*

RAMSEY, JUDGE (dissenting).—In this case, as in the companion case, Ex parte Phillip M. Firmin, 60 Texas Crim. Rep., 368, our Assistant Attorney-General, joined by Mr. A. M. Frazier, county attorney of Hill County, has filed quite an elaborate motion for rehearing in which they assert many grounds why the motion should be granted and judgment rendered substantially in accordance with the view expressed by me in my dissenting opinion heretofore filed in the case. Many of these matters relate to simple questions of practice and are reviewed in the opinion of Judge Davidson in cause No. 907, Ex parte Firmin. I am inclined to the belief that Judge Davidson's disposition of all of these matters is correct. In any event they are in my judgment so inconsequential and immaterial as related to the substantial matter treated at length in Judge McCord's opinion, that I do not feel called upon at this time to discuss them. The opinion of Judge McCord on the main question is undoubtedly the ablest presentation that could be made of the view entertained by the majority and evidences careful preparation and careful consideration of the important question involved in the motion. Indeed, it is not too much to say that this opinion is a model of excellence and lacks only the merit of being correct to be entitled to the highest praise. In my opinion on the original submission I did not go into the question at any considerable length nor did the opinion of the majority do so. My difference with my brethren is so radical and evidences such a different conception of the true intent and meaning of the statute upon which, after all, the opinion must rest and demonstrates also so wide a difference in the correct principles of statutory construction that before the error passes into history and forms another precedent which will sanction, if it does not promote, some other miscarriage of justice, I feel it due myself, the profession and the law to set out in detail the reasons upon which

my conclusion is based. It will be noted by the opinion that it is
not denied that the construction which I feel ought to be placed
on our statute would promote the ends of justice without the denial
to the relator of a single legal right. Nor is it attempted to be
denied or questioned in the majority opinion that the conclusion
which they place upon the statute does, or at least might have, the
effect to grant bail to a man who is guilty and whose offense is not
bailable, or in a contingency easily to be contemplated would operate
to fix the bail so high as to amount practically to a denial of justice.
Unless, therefore, the statute imperatively demands, under a fair
construction, that the case should take the course indicated in the
majority opinion it ought not to receive such a construction and we
ought not to be so fettered and bound. In order to arrive at the
true intent of the statute it may be well to recur to some well set-
tled rules of statutory construction. These rules are so well under-
stood among lawyers, so thoroughly supported by authority and are
in themselves so intrinsically sound that the mere statement of them
will be all that is necessary. It is well settled that "the mere literal
construction of a section in a statute ought not to prevail if it is
opposed to the intention of the Legislature apparent by the statute;
and if the words are sufficiently flexible to admit of some other con-
struction it is to be adopted to effectuate that intention. General
words or clauses may be restricted to effectuate the intention or to
harmonize them with other expressed provisions. Where general
language construed in a broad sense would lead to absurdity it may
be restrained." It is also a well settled rule of statutory construction
that "all consistent statutes which can stand together, though enacted
at different dates, relating to the same subject, and hence briefly
called statutes in pari materia, are treated prospectively and con-
strued together as though they constituted one act. This is true
whether the acts relating to the same subject were passed at different
dates, separated by long or short intervals, at the same session or
on the same day. They are all to be compared, harmonized, if pos-
sible, and, if not susceptible of a construction which will make all
their provisions harmonize, they are made to operate together so
far as possible consistently with the evident intent of the latest
enactments." It is also well settled that a statute must be con-
strued with reference to the whole system of which it forms a part.
Mr. Sutherland, from whose valuable work on Statutory Construc-
tion the above quotations are made, in section 322 says further:
"In the consideration of the provisions of any statute they ought
to receive such a reasonable construction, if the words and subject
matter will admit of it, as that the existing rights of the public, or
of individuals, be not infringed. Considerations of what is reason-
able, convenient, or causes hardship and injustice, have a potent
influence in many cases. It is always assumed that the Legislature
aims to promote convenience, to enact only what is reasonable and

just. Therefore, when any suggested construction necessarily involves a flagrant departure from this aim it will not be adopted if any other is possible by which such pernicious consequences can be avoided." Again, in section 323, the author says: "A construction which must necessarily occasion great public and private mischief must never be preferred to a construction which will occasion neither, or not in so great a degree, unless the terms of the instrument absolutely require such preference. . . . A statute may be construed contrary to its literal meaning, when a literal construction would result in an absurdity or inconsistency, and the words are susceptible of another construction which will carry out the manifest intentions." Again, he says in section 324: "Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice; to favor public convenience, and to oppose all prejudice to public interests." Now, keeping these well ·settled rules in mind let us examine some provisions of our Constitution and of our Code of Criminal Procedure, having relation to this matter. Section 5 of article 5 of our Constitution, is as follows: "The Court of Criminal Appeals shall have appellate jurisdiction coextensive with the limits of the State in all criminal cases of whatever grade, with such exceptions and under such regulations as may be prescribed by law. . . ." Articles 904 and 905 of the Code of Criminal Procedure which relate to appeals generally are as follows: "Article 904. The Court of Criminal Appeals may affirm the judgment of the court below or may reverse and remand for a new trial, or may reverse and dismiss the case, or may reform and correct the judgment, as the law and the nature of the case may require, but in all cases the court shall presume that the venue was proven in the court below; that the jury was properly impaneled and sworn; that the defendant was arraigned; that he pleaded to the indictment; that the charge of the court was certified by the judge and filed by the clerk of the court before it was read to the jury, unless such matters were made an issue in the court below, and it affirmatively appears to the contrary by a bill of exceptions properly signed and allowed by the judge of the court below or proven up by bystanders, as is now provided by law, and incorporated in the transcript as required by law. In all criminal cases by it decided, the Court of Criminal Appeals shall deliver a written opinion setting forth the reason for such decision."

"Art. 905. The Court of Criminal Appeals may reverse the judgment in a criminal action as well upon the law as upon the facts; but when a cause is reversed for the reason that the verdict is contrary to the weight of evidence, the same shall in all cases be remanded for a new trial." Article 919 in the same chapter, having reference in particular to appeals in habeas corpus cases, is as follows: "The appeal in a habeas corpus case shall be heard and determined upon the law and the *facts* arising upon the record, and no

incidental question which may have arisen on the hearing of the application before the court below shall be revised. The only design of the appeal is to do *substantial justice to the party appealing."* This is followed immediately by article 920, the construction of which furnishes the difference between myself and my brethren. Article 919 is important as furnishing a key to the whole situation. It provides, in the first place, that the appeal in a habeas corpus case shall be heard and determined upon the law and the *facts* arising from the record and concludes with the. provision that the only design of the appeal is to do *substantial justice* to the party appealing. So, the question finally resolves itself to this: It is my position and contention that the provisions of article 921, providing for a final disposition of appeals in habeas corpus cases in this court was framed on the assumption that there would be a trial in the court below in which the facts would be developed so that on appeal to this tribunal we could intelligently and consciously pass on the facts and render such judgment as, in the language of article 919, would "do substantial justice to the party appealing;" and that article 920, when correctly interpreted, in the light of the evident intent of the law makers, was never designed to apply to a case where there had been no trial in the court below, no evidence developed either in respect to the offense charged or the ability of relator to give bond and that in such case we would and should be remitted to the general powers of the court and to the provisions with reference to the disposition of cases generally. In this connection I must dissent from the suggestion made in the opinion that my view proceeded upon the idea that the orders of this court in a habeas corpus proceeding ordinarily acts upon the District Court below and that the judgment or mandate of this court must be transmitted through the medium of the District Court hearing the writ as in other cases of appeal. I should hold myself justly subject to censure if, before taking issue with my brethren and before preparing my dissenting opinions, I had not carefully read and considered the few provisions of our Code of Criminal Procedure in respect to appeals in habeas corpus cases, and whether my conclusion shall be deemed correct or not, I can, at least, claim that I had given careful attention to and had fully considered this very matter. In my former opinion I referred to the only two cases reported in the books by this court where this question has ever arisen and undertook therein to demonstrate that in their facts they were substantially different from the facts here. In the Newman case, 38 Texas Crim. Rep., 164, as stated, there had been a *hearing* of the *facts,* that is to say, the person charged to have been robbed was produced as a witness, was sworn and had testified, and in his testimony had failed to identify Newman as having any connection with the robbery. Therefore, there was, as I believe, some reason why the court in that case might be held to be justified in allowing bail. In the

Arthur case therein referred to, the facts were not developed, but there was *proof* in respect to the *ability* of Arthur to make bail. I then thought, as I now believe, that that case was improperly decided, and it ought not to stand as the opinion of this court. So far as the mere matter of precedent is concerned, therefore, unless our action in this case can be sustained by the opinions in the cases above referred to, it is without precedent. Nor do any of the cases cited in the present opinion of Judge McCord in this case, or in the opinion by Judge Davidson in the companion case, as I believe, even remotely support their action. There is some language in the opinion of Judge Clark in the case of Ex parte Erwin, 7 Texas Crim. App., 288, which, if not interpreted in the light of the facts, might furnish some remote analogy to this case. There never sat on this bench a judge who wrote more clearly or lucidly than Judge Clark, yet in considering the opinion of even so great a judge as he was, it is but fair to him and his opinion to interpret his language in the light of the case then before him. The facts in the Erwin case show that he had made an application to Hon. S. Ford, Judge of the then 9th Judicial District, for a writ of habeas corpus, and that on a hearing before Judge Ford he had been admitted to bail in the sum of one thousand dollars, and that he was enlarged on the bail so granted and was not confined in custody or under any restraint at the time the appeal was taken. It was with reference to this condition of affairs that Judge Clark held that since, pending the appeal, the restraint was removed and the applicant had gained his liberty, the proceeding in this court must terminate and that this court would no longer inquire into the legality of an alleged detention, which no longer existed. Such, he declares, to be the uniform practice in this court. The other cases cited have no possible reference to the question before us. So that in order to determine the true intent and purpose of the statute it is essential to undertake its interpretation in the light of reason and aided by the settled rules of construction so thoroughly well understood as to need no further elucidation. Now, article 920 of our Code of Criminal Procedure which declares that on appeal this court shall enter such judgment and make such orders as the law and the *nature* of the case may require, considered in connection with the other provision that the appeal shall be disposed of with reference to the law and the facts of the case and which may emphasize the fact that the *only* design of the appeal is to do *substantial* justice to the party appealing, of necessity implies and presumes, and proceeds upon the assumption that we should and would in every such case be advised from the record of the nature of the case. By the term "nature of the *case*" is here meant not the nature of the *charge*, that is, as to whether it was robbery, theft, seduction, maiming, rape or murder, but the nature of the case with respect to the incriminating facts. In other words, it is clear that by the term "nature of the case," as used in

article 920, we are to understand, is to be meant the same as the law and the facts arising from the record as provided in article 919 of the statute. If this is true, then is it not an anomaly to say that under such a statute requiring us to proceed according to law and the nature of the case, requiring us to decide upon the *law* and the *facts* and under a statute that emphasizes our duty and which says that the *only* design of the appeal is to do substantial justice to the party appealing, that the statute meant to impose on us the task of determining, without knowing any of the facts of the case and without any assurance that we had not done substantial injustice to the party appealing? How can we make such a disposition of the case as ought to be made and as the law says we shall make, that is, a disposition that will insure substantial justice unless we know what was the nature of the case, and how can we apply the law to the facts of the case when we have before us only an indictment? I believe that the great men who wisely framed and fashioned our Code of Criminal Procedure never intended by this statute to make the work of this, the court of last resort in matters of criminal appeal, sheer guess work. If we are merely to guess, and on guessing so decree, why was it necessary to arrange any trial in the court below at all? It would have been more gracious and more speedy to have provided for us to make our guess in the first instance. No, this provision of our Code was intended to apply in cases where there had been a trial and where, by the record, we would be advised of the nature of the case and be able presumably to apply the law of the land to it. This article of our statute was framed and fashioned on the assumption that the due and orderly methods of the law would be followed in the court below, at least to the extent of developing the testimony, and was never intended to apply where there had been no trial, no ascertainment of any of the facts and no development of the case at all, and herein lies, as I conceive, the error of the majority of the court. It is, as I have shown, well settled that we should interpret all laws according to their true intent and purpose. We are never required—at least rarely ever required—to blindly follow the mere letter of the law. We long ago learned in Holy Writ that "the letter killeth but the spirit giveth life." It is impossible for me to conceive that the great framers of this Code deliberately induced the Legislature to make this provision for a case where there would be a violation of the law in the court below in neglecting or refusing to hear testimony and such error having been committed, to impose on this court the irrevocable necessity of deciding without a hearing and without evidence and without a chance to be right on all the matters which we have decided, because it is clear that since we have two cases and must in each case determine, first, whether we shall grant bail at all and then in each case determine the amount of the bail, and that by no system of arithmetical progression known to finite minds

can it be possible by sheer guess work to be right on all the questions. By keeping in mind, however, the true intent of the Legislature, that article 920 was based on the assumption that there would be a hearing, that there would be an observance of the rules of law, that the records would disclose at least sufficient of the facts to advise us of the nature of the case, the whole matter is clear, justice is done, the law demonstrated to be reasonable in its provisions and no one has any cause for complaint. But to adopt the conclusion of the majority that we are forced in such a case, not to reverse the judgment, but ourselves on such a record to frame a judgment which shall be our very own, is from my point of view, to make the deliberations of this court as idle as those of the poorest tribunal ever conceived by the wit of man and make it but little better in its deliberations than the generation of which the great Master spoke, when he said they were "like unto children sitting in the market places and calling one to another and saying, we have piped unto you and ye have not danced; we have moaned unto you and ye have not wept." Against such a result I enter my protest. I would go as far as any man to sustain the law and this at whatever sacrifice of my own personal beliefs to give to him every right which the law gives him, but I shall never abdicate my high duty to decide according to the law and according to the facts; or be constrained to follow what I believe to be an erroneous conception of the statute which is productive of absurdity, certain of injustice and which ends in a farce. Article 920, making provision for rendering judgments in this court in habeas corpus cases, was but following a practice and recognizing a rule which has obtained in our Supreme Court from its foundation. In that tribunal quite frequently where it has reversed a judgment of the court below and where it appeared from the record that the appellant was entitled to recover judgment on the facts, either admitted or found by the court or jury, the judgment when reversed was often rendered in favor of such appellant. Such judgment has sometimes been entered in respect to the whole case, but not infrequently has it happened that the court would render judgment final on appeal in respect to some of the issues and reverse with instructions to the court below to hear and determine other issues arising in the case as the facts might justify. So, too, it has sometimes happened that judgment final would be rendered on appeal as between certain of the parties and reversed and remanded for further inquiry in respect to others of them. This practice has been followed in this court in at least two cases since I have been on the bench, in appeals affecting the obligation of sureties on appeal bonds. We have on reversing the judgment of the court below rendered in this court the judgment that should have been rendered in the trial court, but in all these cases and in every case in the books, the record showed the facts upon which the court could intelligently, in applying the law, enter a

final decree.   Of course, there are numerous cases where judgments have been affirmed for failure to make proof, but, as I believe, no case can be found in the decisions of the Supreme Court of this State or any Court of Civil Appeals of this State, or in any other court in the world where any judgment has been reversed and an original judgment entered in the Court of Appeals where the facts justifying it did not appear.   Now, as it seems to me, article 920 was intended to recognize and introduce an analogous practice in this court in habeas corpus cases.   The only issue in such cases is ordinarily, is the relator entitled to bail, and if this be conceded, in what sum.   It would be idle, therefore, in a case where expedition is so much to be desired to require this court merely to reverse and remand the cause for another hearing, where, being in possession of the facts, it might determine finally whether or not bail should be granted and in what sum; and since it has the right and is authorized by statute to entertain a writ of habeas corpus where the bail is excessive it would seem equally futile and unwise to deny it the power to fix the amount of bail where it has been determined that relator is entitled to bail at all.   Nor do I believe that any support for the majority opinion can be found in the directory provision that our writ shall run to the person having relator in charge.   This provision, of course, is consistent with my position that the article in question was intended to apply in cases where we are authorized to render a final judgment granting bail, that is, in such cases as under the facts would show the relator entitled to such bail.   It was not intended, I think, by article 920 to limit the power of this court in all cases within the narrow scope of its precise limits, to deprive this court of the right to see that justice was done, but this article was intended to be applied only in cases to which in reason and in fairness it could be applied.   But in the opinion it is suggested, "How do we know that the State had any proof to offer?" The reply, of course, is obvious that since by express provision of law neither this court nor any other court can discharge a relator, after indictment found, but can only either deny bail or fix the amount of same, that this furnishes the conclusive legal presumption that there is at least some evidence of his guilt.   But again, it is stated that "the State had its opportunity; its officers in the court below are supposed to know what the law is and what the rules of procedure are; they are supposed to know what the rules of law are and where the burden of proof rests in this character of cases, and to direct the district judge to proceed in a certain way, after the case is reversed in a habeas corpus case, to our minds, would be a reflection upon the legal intelligence of both judge and prosecuting officer."   If this rule is true in this case, of course, it would be equally true in every other case and it would always be dangerous for this court to decide contrary to the court below, since to do so would be a reflection upon their legal intelligence.   We know that

trial courts make mistakes, as we know that we make them ourselves. It is our office, and chief office, to point out and remedy the mistakes of the trial courts and where the court made an error, with proper respect and regard for trial courts, we should never hesitate, and indeed we have never hesitated to criticise, point out and condemn such errors. We do not, in reversing a case, direct the district judge how to proceed, but we do write out at length and lay down what the law is and its proper construction, of course, on the assumption that the trial judge in the District Court, when advised, informed and instructed by us as to what the law is, will out of respect to this court and out of respect to his sworn duty, proceed in accordance with law. In no case can we compel any judge to proceed in any certain manner, and this without reference to how strenuously we enjoin on him the duty so to do, but if we are to hesitate in this case in respect to our duty because we can not compel the trial court to proceed in the manner which we adjudge according to law, then we might as well shut up shop, put away our books, abandon our offices and return to more useful employments. But it has never in my brief service on the bench fallen to my lot to observe in any case, with probably one exception where the District Court has not followed our decisions loyally, if not literally.

Finally, I do not concede, as is implied in the opinion of the majority, that there is any precedent for their action; I do not concede that I have wandered from the beaten paths of the law; I deny that I refuse to follow the provisions of the law where such provision has been made, but I believe and hold that for such a condition as is here presented, the law has made no express provision; I do not depart from the beaten paths of the law, but when presented with a condition where no pathway has been trodden, I refuse to take myself into the wilderness of mere guess work, or to plunge headlong into the morass of uncertainty, but with the aid of reason seek the daylight of sound principle and undertake to place the action and judgment of this court on the firm and solid ground of right and truth. In such a contingency and to attain this wise and just end, if I can find no precedent in the law I will make one— one which is intrinsically just in itself, one that promotes justice, insures order, promotes tranquillity, that denies relator no relief which the law gives him, which shields and protects him, and which is so just and so fair that no man can deny its fairness; and I will make this precedent, not only to achieve these noble ends, but so that the sojourner in some future day in these same fields may in his time find it a beacon light to guide him.

For these reasons and many others which could be assigned, if time permitted, I again earnestly enter my dissent to the judgment herein rendered.