This is an appeal from a conviction of robbery. The jury fixed appellant's punishment at imprisonment for fifteen years, and he was sentenced accordingly.
The indictment charged defendant with robbing Lorial L. McCrory, alleging that the property taken from her consisted of a lady's purse and some money and checks of a total value of, to-wit, five hundred forty-six dollars.
The only issue presented by appellant for review is stated by him as follows:
 "Whether a state court may legally try a defendant for an offense allegedly occurring at the same time and place as another offense for which the defendant has been tried and acquitted?"
The action of the trial court upon which appellant bases his contention that the judgment should be reversed is found in that part of the record that immediately precedes the actual trial. While the jury that had just been selected was excused from the courtroom, the following occurred:
 "MR. THOMPSON: Your Honor, I would like to make an oral motion of autrefois acquit or former jeopardy, and the grounds for said motion I'd like to assign: the defendant in this case, John L. White, has just been tried on a case of robbery. The jury returned a verdict of not guilty and he is again being called on to defend himself in a case of robbery, which was brought out of the same set of facts and circumstances, the same case we just tried. The reason this motion is not in written form is that the attorney for the defendant has not had time out of Court to prepare a written motion. We'd like to ask the defendant be discharged on the grounds he is being placed in double jeopardy and further on the grounds this charge in this case, Number CC-77-117, is arising from the same facts and same circumstances, same day, same instances and facts that came out in case Number CC-116-CC-77-116. We would like the defendant be discharged on the grounds he is being placed in former jeopardy. "MR. SCURLOCK: Judge, we feel this does not place him in former jeopardy. It is a different victim, different property taken and a completely different action, meaning and threats causing the party to part with the property as alleged.
 "MR. THOMPSON: Former jeopardy is the same set of facts, circumstances as we tried in the case Number CC-77-116.
 "THE COURT: Let the record show that the fact that the oral motion rather than being a written motion is certainly acceptable to this Court. I can understand why it is not in writing and would have no bearing on this Court's decision. However, the Court is going to deny the motion and go to trial in this case.
"MR. THOMPSON: We would like to except.
 "(WHEREUPON, THE JURY WAS BROUGHT BACK INTO THE COURTROOM IN THE PRESENCE OF THE DEFENDANT AND PLACED IN THE JURY BOX.)"
There is no disagreement between the parties on appeal as to the accuracy of the statement of defendant's counsel in presenting "oral motion of autrefois acquit or former jeopardy," that "the defendant in this case, John L. White, has just been tried on a case of robbery. The jury returned a verdict of not guilty and he is again being called on to defend himself in a case of robbery, which was brought out of the same set of facts and circumstances. . . ." There is no disagreement between the parties on appeal as to the correctness of appellant's statement in his brief that the day before the commencement of the trial of the case now before us, defendant was tried and acquitted by the verdict of a jury finding him not guilty of robbing one Patricia Miller. There is no disagreement between the parties that Lorial McCrory and Patricia Miller were both in the store of N.O. Lewis in Halsell, Alabama, on December 21, 1976, when there was a robbery of persons in the store by three black men.
The parties are in disagreement on the issue whether the proceeding in the prior *Page 242 
case in which defendant was acquitted constituted former jeopardy as to the crime charged in the case now before us.
Appellant relies upon, and cites as his only authority, Ashev. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).
The Supreme Court in Ashe v. Swenson, in an opinion by Justice Stewart expressing the view of seven members of the Court,[1] established the principle for the first time that the rule of collateral estoppel is embodied in the guaranty of the Fifth Amendment prohibiting double jeopardy. As a result, the Court concluded that appellant, who had been acquitted on an indictment charging him with the robbery of a particular person could not be constitutionally tried on an indictment charging him with the robbery of another person on the same occasion, when the only "rationally conceivable issue in dispute before the jury" in the first case was whether defendant in the second case had been one of the robbers "in the first case."
There is no doubt that this case and the Ashe case are similar to each other in that each involved a trial for the robbery of a particular person after there had been an acquittal of defendant in a trial for the robbery of another particular person on the same occasion. If this case and Ashe
are similar in all other material respects, we, of course, must follow Ashe.
In Ashe v. Swenson, it was said:
 "Straightforward application of the federal rule to the present case can lead to but one conclusion. For the record is utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that Knight had not been a victim of that robbery. The single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. And the jury by its verdict found that he had not. The federal rule of law, therefore, would make a second prosecution for the robbery of Roberts wholly impermissible." (397 U.S. 445, 446, 90 S.Ct. 1195)
If we are to conclude from the record that the "single rationally conceivable issue in dispute before the jury" in the case in which defendant was acquitted was "whether" he "had been one of the robbers," a reversal of the judgment of the trial court and a discharge of defendant would be required. We proceed to a determination of that question.
As we do not have before us a record of the trial of the case charging defendant with the robbery of Patricia Miller, our information as to the actual issues, and the evidence and proceedings in that case, is limited to what we can glean from the record in the case before us and from express or necessarily implied agreements of the parties. An outline of the essential facts in this case would be helpful to an understanding of the conclusions we reach. We think a detailed statement of the facts is neither necessary nor helpful.
Dan Campbell testified that he was robbed by some men on December 21, 1976, while Campbell was at the Lewis store. He identified defendant as one of the robbers.
Lorial McCrory, the alleged victim in this case, testified that she was a store clerk at the Lewis store on December 21, 1976, and that three black males entered the store and robbed the people in the store. She said they robbed her of the items stated in the indictment.
Becky McCrory testified that she was visiting her sister-in-law Lorial in the store at the time and that three black men came in and robbed people in the store. She saw Lorial give the men her purse. She identified the appellant as one of the robbers.
Patricia Miller, the alleged victim in the case in which defendant was acquitted, testified that she went to the store with "some money, one dollar"; she went to the store alone to get milk and bread; she "got the bread and milk and was waiting for Lorial to finish waiting on another customer in the *Page 243 
store at the time." She then handed the dollar to Lorial and received four cents in change, which she put in her pocket and put the milk and bread in a sack. She said that soon thereafter "three colored boys came in the store." She identified defendant as one of them. As she was in the process of leaving the store, defendant stated, while pointing a pistol at her, that she wasn't going anywhere, to come back in the store, which she did. The other two turned and said it was a "stick-up." Defendant had her by her left arm and hit her in the back of the head with a gun. After he hit her he said for her to go to the counter and put her head face down on the counter, which she did. Her testimony continued as follows:
"Q What happened when you got to the counter?
 "A He [defendant] said give me your money. I reached in my pocket and pulled out four cents and layed (sic) it up on the counter.
"Q What happened then?
 "A Then he — the other two and Lorial were on the other side of the counter. They were telling her to give them the money that was in the cash register and Becky — they wanted to know if Becky had a purse and if there was any hidden money.
 "Q Where were you at this time, standing at the counter?
"A Yes, sir, with my face on the counter.
 "Q After you pulled out the four cents, you put your face on the counter.
 "A I had my face on the counter when I pulled out the four cents."
Thereafter the witness continued to testify at length both on direct examination and on cross-examination and gave an account of gross physical abuse of her by the three robbers, particularly the defendant, and of a noisy commotion in the store by some of the robbers in their apparently successful efforts to take from others in the store, including two persons who had come in the store after the robbers entered it.
There were other witnesses for the State, but we do not believe that a recital of their evidence has any bearing on the main issue before us.
It should be stated that defendant testified in his own behalf to the effect that he was in Mobile at the time of the alleged robbery, and to some extent he was supported by testimony of his brother and the wife of another brother.
We cannot say from the record before us that the only "rationally conceivable issue in dispute before the jury" in the case in which defendant was acquitted was whether defendant "had been one of the robbers." Furthermore, it seems to us that the record is not "utterly devoid of any indication that the first jury could rationally have found" that Patricia Miller "had not been a victim" of a robbery, and in such respects this case differs materially from Ashe v. Swenson.
Although the evidence in the first case may have been materially different from the evidence in the second case, there is strong indication in the only evidence before us that the State's case against defendant in the first case did not fail by reason of insufficiency of proof as to defendant's presence and participation in the robbery, but on the ground that there was no robbery of the alleged victim in that case. What happened to the four cents the alleged victim had in her pocket and laid upon the counter, the record before us does not disclose. To constitute a robbery there must be, in addition to other elements, a taking of property of another from his person or from his presence or personal physical control or protection. Hill v. State, 145 Ala. 58, 40 So. 654 (1906);Henderson v. State, 172 Ala. 415, 55 So. 816 (1911); Rice v.State, 204 Ala. 104, 85 So. 437 (1920); Bray v. State,47 Ala. App. 308, 253 So.2d 531, cert. denied, 287 Ala. 726,253 So.2d 533 (1971); Woods v. State, 55 Ala. App. 450,316 So.2d 698 (1975); Mitchell v. State, 57 Ala. App. 601, 329 So.2d 658, cert. denied 295 Ala. 412, 329 So.2d 663 (1976); Mays v. State, Ala.Cr.App., 335 So.2d 246 (1976); Moseley v. State, Ala.Cr.App., 357 So.2d 390 (1978). *Page 244 
That some economists, in these days of inflation in unprecedented distention, are suggesting that pennies have no value, in the eyes of the law they still do and, regardless of their number, what was said in James v. State, 53 Ala. 380, 387
(1875), in quoting from Roscoe, Evidence in Criminal Cases, 1908, still applies:
 "`. . . [T]he value of the property is immaterial. A penny, as well as a pound, forcibly extorted constitutes a robbery, the gist of the offense being the force and terror.'"
That a jury could and should have rationally concluded in the first case that appellant herein, the defendant therein, was guilty of a lesser included offense, such as an assault with intent to rob or an assault and battery, does not militate against a conclusion that the State is not collaterally estopped from prosecuting him for the robbery of another alleged victim. True it is that an outright acquittal of a crime expressly charged in an indictment is a bar, by reason of the prohibition against double jeopardy, to a prosecution for a lesser included offense.
 "Cases exist in which a minor offense may be discharged by the acquittal of the individual charged, on an indictment for a major offense; but these are cases in which the jury, trying the case, could have lawfully returned a verdict for the lesser crime. — Thus an acquittal for murder would be a bar to an indictment for manslaughter. So of a burglary, when the same indictment included a charge of larceny — an acquittal would be a complete discharge. . . ." State v. Standifer, 5 Port. 523, 531 (1837).
A distinguishing difference between res judicata[2] and collateral estoppel is that res judicata applies so as to prevent the relitigation of an issue that could have been litigated in previous litigation unto judgment between the same parties, or their privies, as to the same cause of action, but collateral estoppel is not applicable unless some material issue in the second case between the same parties, or their privies, as to another cause of action, was actually decided, expressly or by necessary implication, in the first case. Stonev. William Steinen Mfg. Co., 7 N.J. Super. 321, 70 A.2d 803, 807
(1949); In re, Williams Estate, 36 Cal.2d 289, 223 P.2d 248, 22 A.L.R.2d 116 (1950).
For a scholarly and valuable contribution to an understanding of questions generated by Ashe v. Swenson, reference is made to a timely address by our Judge Tyson before the Alabama Association of Circuit Judges on the subject of Double Jeopardy and Collateral Estoppel. 37 Ala. Lawyer 208. Judge Tyson directs attention to a wealth of authorities on the matter of the difference between res judicata and collateral estoppel, and related questions, including Duke v. State, infra, which will be analyzed hereinafter.
The implant of the doctrine of collateral estoppel into the constitutional guaranty against double jeopardy is a recent operation, dating from Ashe v. Swenson, but judicial recognition of a distinction between the conclusiveness of a judgment upon issues subsequently litigated between the same parties where the second litigation is based on the same cause of action as the first and the conclusiveness of a judgment in the first upon the matter subsequently litigated where the causes of action are not the same, is of ancient origin. As stated by Judge L. Hand:
 "A judgment may be a merger or bar, or it may be an estoppel. For the first, the cause of action must be the same; for the second, they may be as different as possible. On the other hand, the merger or bar extends, not only to all matters pleaded, but to all that might have been, while the estoppel extends only to facts decided and necessary to the decision. All this is very old law. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195; So. Pac. Ry. v. U.S., 168 U.S. 1, 18 S.Ct. 18, *Page 245 42 L.Ed. 355; United Shoe Machinery Corporation v. U.S., 258 U.S. 451, 42 S.Ct. 363, 66 L.Ed. 708; Myers v. International Trust Co., 263 U.S. 64, 44 S.Ct. 86, 68 L.Ed. 165; U.S. v. Moser, 266 U.S. 236, 45 S.Ct. 66, 69 L.Ed. 262." Irving Nat. Bank v. Law, 10 F.2d 721
(2d Cir. 1926).
It is not necessary for us to become involved in any semantics of the terms res judicata and collateral estoppel which to some extent have produced a logomachy as to whether they are contradistinguishing terms or on the other hand whether one embraces the other. The authorities are in general agreement that if the two cases are not as to the same cause of action, a judgment in one case in not conclusive of the material issue or issues in the other case unless such issue or issues have been actually determined by the judgment relied upon.
The case of Duke v. State, 48 Ala. App. 188, 263 So.2d 165, cause specially remanded, 288 Ala. 538, 263 So.2d 170, on special remand, 48 Ala. App. 190, 263 So.2d 167, after special remand, 288 Ala. 544, 263 So.2d 176, on remand, 48 Ala. App. 752, 263 So.2d 177, ran a course that resulted in the consideration of many of the questions presented here. The Court of Criminal Appeals, in determining whether Ashe v.Swenson was applicable, held that Ashe v. Swenson had no retroactive application and that as the trial of Duke took place before the decision in Ashe v. Swenson, Ashe v. Swenson
was inapplicable to Duke. The Supreme Court of Alabama held otherwise, that Ashe v. Swenson was retroactive. As a result, the Court of Criminal Appeals decided that in accordance with its opinion on the first remand as to principles of collateral estoppel the State was estopped from prosecuting Duke for the murder of Lelus L. Harrison under its plea of autrefois acquit
by reason of Duke's acquittal of the murder of Harrison's son, Le Grande Harrison.
The conclusion by the Supreme Court of Alabama in Duke leaves undisturbed what was said by the Court of Criminal Appeals on the subject of the governing principles of the doctrine of collateral estoppel. The Court of Criminal Appeals found it necessary, notwithstanding its view as to the retroactivity ofAshe v. Swenson, to consider whether under the law of Alabama, as distinguished from federal law or the law of some other jurisdiction, the doctrine of collateral estoppel is applicable in a criminal case, and in doing so, it said at 263 So.2d 167, 168:
 "Collateral estoppel differs from res judicata in that in the latter the cause of action in the first and second occasions must be identical. Perhaps the most often cited opinion on this distinction is found in C.I.R. v. Sunnen, 333 U.S. 591, where at pp. 597 and 598, 68 S.Ct. 715 at p. 719, 92 L.Ed. 898, we find:
 "`It is first necessary to understand something of the recognized meaning and scope of res judicata, a doctrine judicial in origin. The general rule of res judiciata applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations . . .
 "`But where the second action between the same parties is upon a different cause or demand, the principle of res judicata is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' . . ."
 "First we point out that no Alabama case has been shown to us applying the doctrine of collateral estoppel in a criminal case. Mitchell v. State, 140 Ala. 118, 37 So. 76, stated, by way of advice for a trial de novo, that the defendant — when faced with admission of proof of another crime not of the res gestae — was then entitled to show an acquittal of the other charge. No plea of autrefois acquit was involved. "Jay v. State, 15 Ala. App. 255, 73 So. 137, contains a learned discussion, all of *Page 246 
which, however, is consigned to the realm of obiter dicta by the concluding paragraphs. Obviously perjury to secure acquittal neither fits the same evidence or the same transaction test as to the antecedent accusation.
 "Hence, we conclude that collateral estoppel has not been accepted in Alabama as a bar to an indictment tried after an acquittal for a crime distinguishable under the Blackstonian `same offense' criterion. . . ."
Duke v. State, in its finality, held that by reason of Ashev. Swenson, the acquittal of a defendant for the murder of one victim did become, but it does not necessarily become, a basis for a valid plea of autrefois acquit, or former jeopardy, in a prosecution for his murder of another victim on the same occasion. It logically follows that this is also true where the crime charged is robbery as in this case.
Distinguishing difference between Duke and the case now under review on the question of the applicability of the principle of collateral estoppel is to be found in the words of Justice Merrell, in speaking for a majority of the Supreme Court of Alabama, at 263 So.2d 171, as follows:
 "Petitioner's main contention in the Court of Criminal Appeals and here is that his conviction cannot stand under the holding in the Ashe case because the only issue in his first case was whether the petitioner was one of the men who unlawfully entered the Harrison home on January 18, 1967, and he was acquitted by the jury in the case where he was charged with killing LeGrande Harrison."
As heretofore shown, the record in this case does not disclose that the only issue in the case in which appellant was acquitted was whether he was one of the men participating in the robbery of persons in the store of N.O. Lewis in Halsell, Alabama, on December 21, 1976. We cannot, therefore, on the record before us, say that a case of double jeopardy has been presented.
In reaching this conclusion we are not unmindful of the possibility, in the light of a disclosure of all the pertinent facts and circumstances with reference to the other trial, that the only issue actually determined was that appellant was not one of the robbers. We are not critical of anyone for not making as a part of the record in this case that which both parties know, and the trial court, assuming the same judge tried both cases, knows as to the controverted issues in the first case.
We appreciate the attitude of all concerned on the trial, including the trial judge, to the effect that an oral plea or motion of autrefois acquit would be considered to the same extent as if it were in writing, but we cannot construe that understanding or stipulation as one that would empower us at this time to assume facts that the record does not disclose, or to reverse the judgment of the trial court when it, as the trial judge in the first case as well as the second case, would have knowledge of facts beyond our range of cognizance.
We regret a decision that may not be dispositive of the issue in the minds of the parties, which conceivably could result in great injustice to appellant, and we welcome any application for rehearing in which by stipulation of the parties we could determine conclusively whether the only rationally conceivable issue in dispute before the jury in the other case was whether appellant had been one of the robbers. It presently appears to us that such was not the only rationally conceivable issue. We must be guided now by what is before us. We express no opinion as to the proper result upon an agreement between the parties as to the material facts or a full revelation thereof.
Realizing the probable practical difficulty of obtaining a timely agreement or stipulation of the parties that would enable this Court on any application for a rehearing to render a decision that would be dispositive of the issue in the minds of the parties and thereby prevent any conceivable injustice to appellant and the necessity for a post-conviction proceeding for relief therefrom, we turn to an alternative provided by Rule 10 (f) Ala. Rules of Appellate Procedure. Pursuant to said rule, the case should be *Page 247 
remanded to the trial court with directions that it, with the aid and cooperation of counsel for both parties, conduct a hearing and make a finding of facts pertinent to the question whether appellant was one of the robbers was the only rationally conceivable issue in dispute before the jury in the case in which appellant was acquitted. Thereafter, under direction of the trial court and with the cooperation of the clerk of the court and the court reporter, a supplemental record of the proceedings pursuant to the directions stated herein shall be duly certified and transmitted to this Court.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of this Court. The case is hereby remanded to the trial court for compliance with the directions contained in the opinion.
REMANDED WITH DIRECTIONS.
All the Judges concur.
[1] Chief Justice Burger dissented; Justice Black rejected what he considered as a possible "implication" in the opinion not decisive of the instant case.
[2] Which principle prevents the prosecution for a lesser included crime after an acquittal on the charge as a whole.