**Ex parte James RATHMELL.**

**No. 973–83.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 17, 1986.

---

**34**

Nathaniel G. Rhodes, Corpus Christi, for appellant.

Grant Jones, Dist. Atty. and Thomas G. White, Asst. Dist. Atty., Corpus Christi, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Judge.

This is a pretrial habeas corpus application. The applicant seeks to have an indictment which alleges that he committed involuntary manslaughter dismissed because he reasons that a trial on the merits of the charge will expose him to double jeopardy. See *Ex parte Robinson*, 641 S.W.2d 552 (Tex.Cr.App.1982).

Applicant was originally denied his writ by the 109th District Court in Nueces County. Applicant then appealed this denial to the Thirteenth Court of Appeals. The Court of Appeals granted applicant's request for relief and ordered the indictment dismissed. The State in turn filed a petition for discretionary review with this Court, which we granted.

At the habeas corpus hearing, applicant and the State stipulated to the facts. Applicant, driving while intoxicated, struck an automobile in which two women were riding. Both women died as a result. Applicant was separately indicted for involuntary manslaughter for both deaths under V.T.C.A., Penal Code, Section 19.05(a)(2).

He was subsequently convicted of the involuntary manslaughter of one of the women and punishment was assessed at two years' confinement in prison. *Rathmell v. State*, 653 S.W.2d 498 (Tex.App.-Corpus Christi, 1983, pet. refused). The State is now proposing to try applicant for the death of the second woman.

Essentially, the State alleges on review two things. First, the State argues that an application for a pretrial writ of habeas corpus is not the appropriate vehicle by which applicant should seek relief. Secondly, the State argues that nothing in the legal concept of double jeopardy bars the applicant's trial for the death of the second woman.

■ This Court has established in the case of Ex parte Robinson, supra, that the pretrial writ of habeas corpus is an appropriate remedy to review an individual's double jeopardy claim. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 691 (1977). Indeed, the Supreme Court made it clear that under the circumstances of this case an interlocutory appeal is not only a proper but a *preferred* remedy:

"Finally, the rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence. To be sure, the Double Jeopardy Clause protects an individual against being twice convicted for the same crime, and that aspect of the right can be fully vindicated on an appeal following final judgment, as the Government suggests. However, the Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to *trial* for the same offense." (emphasis in original). 431 U.S. at 660, 97 S.Ct. at 2040.

The State's contention that the case of *Ex parte Ruby*, 403 S.W.2d 129 (Tex.Cr. App.1966), is controlling in this matter is

without merit. We overrule this ground of error.

The State next contends that the appellate court erred in ruling that a second trial of applicant would offend the prohibition against double jeopardy which is a fundamental feature of both the Federal and State Constitutions. Amendment V, U.S. Constitution; Article I, Section 10, Texas Constitution. The State contends that the contemplated trial of applicant at issue is in accordance with this Court's holding in *Ex parte McWilliams*, 634 S.W.2d 815 (Tex.Cr. App.1982), and the rule of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed.2d 306 (1932).

The appeals court correctly noted that the *Blockburger* doctrine is not precisely applicable to the case at bar. The *Blockburger/McWilliams* rationale applies to situations in which the criminal conduct violates two separate distinct statutory provisions. In this case the applicant's conduct violates one distinct statutory act, though it violates it twice.

Section 19.05(a)(2) of the Texas Penal Code reads as follows:

"(a) A person commits an offense if he:

" * * *

"(2) by accident or mistake when operating a motor vehicle while intoxicated and, by reason of such intoxication, causes the death of an individual."

An individual is defined in V.T.C.A., Penal Code, Section 1.07(a)(17), as follows:

" 'Individual' means a human being who has been born and is alive."

■ It is clear from the language of these statutes that the Legislature has determined and intends that the offense of involuntary manslaughter (as defined in Section 19.05(a)(2), supra) is completed with the death of a single individual. Whether the other death in question occurred prior to, contemporaneously with, or subsequent to the death for which the appellant was first tried is of no consequence. Each individual death constitutes a complete and distinct offense (albeit under the terms of the one statute) and as such each death

constituted a separate "allowable unit of prosecution." *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).

As this Court stated in the *McWilliams* case:

"... The constitutional provisions speak of double jeopardy in terms of the 'same offense' rather than 'same transaction.' ..." 634 S.W.2d at 823.

With the abolition of the carving doctrine, we are left with little Texas precedent as to the resolution of the present issue. However, there is guidance in the jurisprudence of our sister states. In 7A Am.Jur.2d, Automobiles and Highway Traffic, Section 391, it is written:

"Most courts hold that there are as many separate and distinct offenses as there are persons injured or killed by the unlawful operation of a motor vehicle, so that successive prosecutions may be instituted against the person who committed the unlawful act without violating the rule against double or former jeopardy."

The Supreme Court of Tennessee recently had occasion to examine the same issue. Rejecting their previous position which would bar multiple prosecutions in cases such as that before us, the Court overruled its prior holdings and adopted the majority position. *State v. Irvin*, 603 S.W.2d 121 (Tenn.1980).

"We are of the opinion that the [prior] analysis improperly focuses upon the fictional 'intent' of the accused rather than upon the elements of the criminal offense with which he is charged. In that case as in this, the offense was homicide—the killing of another person. In our opinion, when more than one person is killed, there is more than one homicide—regardless of any fictional 'intent' or whether the deaths result from a single 'act' or a series of acts. It seems illogical to us, as a general proposition, to hold that when two persons have been killed by an accused, he has committed only one homicide. Prior cases in this state so holding are overruled or mod-

ified to the extent that they conflict herewith." *State v. Irvin*, supra, at 123.

For other cases which are in accord, see *White v. State*, 378 So.2d 239 (Ala.Cr.App. 1979) *writ denied* 378 So.2d 247; *State v. Salazar*, 539 P.2d 946, 24 Ariz.App. 472 (1975); *Holder v. Fraser*, 215 Ark. 67, 219 S.W.2d 625 (1949); *Neal v. State*, 55 Cal.2d 11, 9 Cal.Rptr. 607, 357 P.2d 839 (1960); *People v. Smith*, 182 Colo. 228, 512 P.2d 269 (1973); *State v. Dubina*, 164 Conn. 95, 318 A.2d 95 (1972); *Murray v. United States*, 358 A.2d 314 (D.C.App.1976); *McHugh v. State*, 160 Fla. 823, 824, 36 So.2d 786 (1948), *cert. denied* 336 U.S. 918, 69 S.Ct. 640, 93 L.Ed. 1081 (1949); *People v. Allen*, 368 Ill. 368, 14 N.E.2d 397 (1938); *State v. Cook*, 158 N.W.2d 26, 261 Iowa 1341 (1968); *Fleming v. Commonwealth*, 284 Ky. 209, 144 S.W.2d 220 (1940); *State v. Pettle*, 286 So.2d 625 (La.1973); *Cousins v. State*, 354 A.2d 825, 277 Md. 383 (1976); *People v. Winquest*, 115 Mich.App. 215, 320 N.W.2d 346 (1982); *State v. Fredlund*, 200 Minn. 44, 273 N.W. 353, 113 A.L.R. 215 (1937); *Burton v. State*, 226 Miss. 31, 79 So.2d 242 (1955); *State v. Whitley*, 382 S.W.2d 665 (Mo.1964); *State v. Pierce*, 199 Mont. 57, 647 P.2d 847, *dissented*, 199 Mont. 57, 651 P.2d 62 (1982); *Jeppesen v. State*, 154 Neb. 765, 49 N.W.2d 611 (1951); *State v. Hoag*, 21 N.J. 496, 122 A.2d 628 (1956); *State v. Johnson*, 208 S.E.2d 206, 23 N.C.App. 52, *certiorari denied* 210 S.E.2d 59, 286 N.C. 339 (1974); *Com. ex rel Lockhart v. Myers*, 193 Pa.Super. 531, 165 A.2d 400 (1960); *People v. Dean*, 392 N.Y. S.2d 134, 56 A.D.2d 242 (1977), *affirmed* 412 N.Y.S.2d 353, 45 N.Y.2d 651, 384 N.E.2d 1277 (1978); *State v. Martin*, 154 Ohio St. 539, 96 N.E.2d 776 (1951); *Fay v. State*, 62 Okl.Cr. 350, 71 P.2d 768 (1937); *State v. Seidschlaw*, 304 N.W.2d 102 (S.D. 1981); *State v. Irvin*, 603 S.W.2d 121 (Tenn.1980); *Lawrence v. Commonwealth*, 181 Va. 582, 26 S.E.2d 54 (1943); *State v. Taylor*, 185 Wash. 198, 52 P.2d 1252 (1936); *State v. Rabe*, 96 Wis.2d 48, 291 N.W.2d 809 (1980); *Goodman v. State*, 601 P.2d 178 (Wyo.1979); 7 Am.Jur.2d Automobiles and Highway Traffic subsection 344 (1963); 22 C.J.S. Criminal Law subsection 9(2), 298 (1961); Annot., 172 A.L.R. 1053, 1062 (1948); West's General Digests, Criminal Law subsection 200(8).

We now adopt the reasoning of the Supreme Court of Tennessee as it pertains to this case. Because we find that applicant has violated Section 19.05(a)(2), supra, twice, by causing the death of two individuals, we find that two distinct and separate offenses have been committed. Under these circumstances, the trial of applicant for the death of the second woman is not barred by the prohibition against double jeopardy.

The State's petition is granted; the Court of Appeals' decision granting relief is reversed and applicant's application for habeas corpus is, denied.

TEAGUE, Judge, concurring and dissenting.

I agree with the majority opinion that when double jeopardy is an issue in a case, pretrial application for writ of habeas corpus is one vehicle that might be used to attack the upcoming prosecution of the accused. This decision reaffirms *Ex parte Robinson*, 641 S.W.2d 552 (Tex.Cr.App. 1982), in which this Court held that an accused person could raise on appeal his double jeopardy claim before trial on the indictment he was attacking. It is the other part of the majority opinion, which is virtually devoid of any legal reasoning, that holds that the upcoming trial of James Rathmell, hereinafter sometimes referred to as the applicant, for violating the provisions of V.T.C.A., Penal Code, Section 19.-05(a)(2), for which offense he has already been prosecuted, convicted and punished, is not barred by the Double Jeopardy Clauses, because there were two victims and not just one, that causes me to file this opinion. The holding by the majority opinion erroneously disapproves part of the well reasoned opinion by Justice Utter of the Corpus Christi Court of Appeals in this cause that held in favor of the applicant on this point. See *Ex parte Rathmell*, 664 S.W.2d 386 (Tex.App.-Corpus Christi 1983).

Notwithstanding that almost any student of the law who has read the recent decisions by the Supreme Court of the United States and by this Court should agree that the law on the subject of double jeopardy is in a state of flux and confusion, see Westen and Drubel, "Toward a General Theory of Double Jeopardy," *The Supreme Court Review* (1978), all should agree that "[t]he right not to be placed in jeopardy more than once for the same offense is a vital safeguard in our society, one that was dearly won and one that should continue to be highly valued." *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), (Black, J. dissenting opinion). Furthermore, "fear and abhorrence of governmental power is one of the oldest ideas found in western civilization." Id. The majority opinion exhibits and displays an almost naive understanding of the concept of double jeopardy, which has roots that run deep into Greek and Roman times.

The record reflects that in Rathmell's first trial the State proved that the vehicle driven by Rathmell, who was established to have then been intoxicated, by accident or mistake, collided with another vehicle driven by Devary Durrill, causing the immediate death of Bonnie Watkins, the only passenger in the vehicle, and that, by reason of such intoxication, the cause of Watkins' death was the applicant's intoxication. Durrill died three days later. Thus, the State proved and the jury found "that thing" which worked a causal connection between Rathmell's intoxication and the death of Watkins. The jury found Rathmell guilty and assessed his punishment at two years' confinement in the penitentiary. The judgment of conviction was affirmed on appeal, see *Rathmell v. State*, 653 S.W.2d 498 (Tex.App.-Corpus Christi 1983), and this Court refused the applicant's petition for discretionary review.

Except for the identity of the victim, the indictment in the first case and the indictment in this cause are in all things identical. We can therefore safely assume that except for establishing the death of Durrill, the State's proof and the trial court's charge in the impending case will in all

things be identical to that presented at the first trial. "That thing" which worked a causal connection between Rathmell's intoxication and Watkin's death will also be in all things identical in the impending trial. Also see Section 19.05(a)(2), supra, and *McClung's Jury Charges for Texas Criminal Practice* (1985 edition), at pages 81–82; *Long v. State*, 152 Tex.Cr.R. 356, 214 S.W.2d 303 (Tex.Cr.App.1948); *Daniel v. State*, 577 S.W.2d 231 (Tex.Cr.App.1979), and Art. 802c (1925 Penal Code), upon which Section 19.05(a)(2) is based.

Section 19.05(a)(2), supra, is taken almost verbatim from the former statute, but is carried forward into the present Penal Code in a more current format. However, research has yet to reveal just exactly why the Legislature chose to have a subsection (a)(2) in Section 19.05. In light of the wording of this subsection, the Practice Commentary's suggestion that the subsection was placed there because "it represents a legislative definition of recklessness per se" borders on the ludicrous. However, as Judge Douglas of this Court stated in the dissenting opinion that he filed in *Ormsby v. State*, 600 S.W.2d 782 (Tex.Cr.App.1980), "Practice commentaries, like obiter dicta, may prove persuasive, but are not binding authority."

The record reflects that Rathmell sought in the trial court the equivalent of a writ of prohibition to prohibit the State from reprosecuting him for violating the provisions of Section 19.05(a)(2), supra, for which he has already been prosecuted, convicted and punished, in which new trial, as noted, the State will use the same identical criminal act or acts of misconduct that it used in the first trial. The only difference will be the identity of the victim. The trial court denied Rathmell any relief. The Corpus Christi Court of Appeals, however, ruled in favor of Rathmell on this point. See supra. This Court granted the State's petition for discretionary review in order to make the determination, inter alia, whether the decision by the court of appeals was correct. The majority opinion holds that the decision of the court of appeals is erroneous. How-

ever, I find that it is not the decision of the court of appeals that is erroneous but, instead, it is the majority opinion of this Court on this point that is erroneous. In reversing the decision of the court of appeals, and rejecting Rathmell's contention, it is apparent to me that the majority opinion values the ancient concept of double jeopardy much like one might value a cockroach.

Although the majority opinion is virtually devoid of any legal reasoning to support its holding, it "string cites" the reader to 31 decisions from foreign jurisdictions. Hon. Mary F. Klapperich, assistant district attorney of Nueces County, in the brief she filed for the State on March 7, 1984, in her "Appendix A", also string cites the same cases that the majority opinion string cites. After carefully reading all of the string cites, I have concluded that what at first glance appears as an impressive array of supporting authority for the majority opinion's holding is in actuality an accumulation of analogous case law which in most instances, though somewhat similar, is readily distinguishable from this cause, either because of factual or procedural differences.

At this moment in time, because I believe that it is important for the reader to understand what the fundamental issue in this cause is all about, I am going to digress and discuss the ancient concept of double jeopardy. After doing so, and after again "dusting off my hunting license and donning one of those marvelous British safari hats for the occasion," see *Ex parte Krupps et al.*, 712 S.W.2d 144 (Tex.Cr.App. 1986) (Campbell, J. dissenting opinion), I shall then further discuss the majority opinion.

The concept and guarantee against double jeopardy, as provided by Art. 1, Section 14, of the Texas Constitution, which states, "No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction," and as provided by the Fifth Amendment to the Federal Constitution, which states in part, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb," which is binding on the States, see *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), have roots in Greek, Roman, Hebrew, and canon law. The concept of double jeopardy can be traced to what Demosthenes, the Greek orator and political leader, said over 2,000 years ago, in 355 B.C.: "[T]he laws forbid the same man to be tried twice *on the same issue,*" (My emphasis), 1 *Demosthenes* 589 (J. Vance trans. 4th ed. 1970), also see Sigler, *Double Jeopardy, The Development of a Legal and Social Policy* (1969), which, because of its wording, may have actually been the source of the former doctrine of carving. See *Ex parte Mc Williams*, 634 S.W.2d 815 (Tex. Cr.App.1982) (Opinion on State's motion for rehearing), in which an aggressive and assertive majority of this Court, after concluding that the doctrine of carving "encouraged crime" (822), banished the doctrine from Texas criminal jurisprudence. Also see *The Digest of Justinian*, in which the roots of the Double Jeopardy Clauses "found final expression." There is also some evidence of a remote double jeopardy ancestor in the common law as early as 1250 and in the Spanish Real of 1255. See Frels and Cruickshank, "Double Jeopardy, The Aftermath of Waller and Ashe, A Continuing Confusion," 15 *South Texas Law Journal* (1973–74); Westen and Drubel, supra; Levy, *Origins of the Fifth Amendment* (1968). Justice Black, in the well reasoned dissenting opinion that he filed in *Bartkus v. Illinois*, supra, also discussed the ancient concept of double jeopardy.

Of all the procedural guarantees in the respective Bill of Rights, the principle of double jeopardy is the most ancient. Levy, supra. Because the Double Jeopardy clauses reflect the fear of oppression, they are to be liberally construed by this Court, see *Grisham v. State*, 19 Tex.Ct.App. 504 (1885), and by the Supreme Court of the United States, see the list of citations, with discussion, found in 71 *Iowa Law Review*, fn. 13, at page 326. The "underlying idea

[behind double jeopardy] ... is that the State with all its resources and power should not be allowed to make repeated attempts to convict [and punish] an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity ..." *Green v. United States*, 355 U.S. 184, 187–188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

One might suppose that because the concept of double jeopardy is of such antiquity by now it would have been thoroughly refined and simplified, but that is just simply not so, which is contrary to what the majority opinion in this cause implies. To easily see this, one need only read this Court's and the Supreme Court of the United States' recent decisions on the subject. Of course, much of the confusion, inconsistency, and ambiguity by the respective Courts is obviously due in part to changing personnel, as well as the ever-changing and diverse views and attitudes of the members of the courts concerning the nature of competing interests and the appropriate way to reconcile them.

Contrary to what the majority opinion might imply, there is not now, nor will there probably ever be, a bright line rule that will cover every conceivable facet of the meaning of double jeopardy, simply because, generally speaking, the principle of double jeopardy serves three distinct interests, with each interest having equal importance: (1) an interest in finality; (2) an interest in avoiding double punishment; and (3) an interest in allowing the system to acquit against the evidence. In this instance, all but the third interest is implicated in this cause. However, the majority opinion does not even discuss the two interests that are implicated in this cause.

In this instance, we are confronted with both the interest in avoiding double punishment and the interest in finality. The majority opinion appears to lump these two interests together.

I shall next discuss the issue of the right of a defendant not to be "doubly" punished for a single criminal act of misconduct.

This was not discussed in *Ex parte Mc Williams*, supra, in which this Court erroneously banished the doctrine of carving from our jurisprudence, because "it encourages crime." Notwithstanding my disagreement with the opinion, *Ex parte Mc Williams*, supra, limits itself to obtaining multiple convictions for criminal wrongs committed in the same transaction; it does not concern itself with "double" punishment or violating the same statute twice by committing the same criminal act.

In *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), the Supreme Court of the United States was confronted with the issue whether a defendant's *punishment* might be cumulated for violating the Mann Act when he transported *two* women in the same vehicle across state lines for the purpose of prostitution or debauchery, i.e., whether he committed only *one* offense or whether he committed *two* separate offenses for purposes of punishment. In holding that for purposes of punishment only one offense had been committed, the Court first pointed out that the appropriate punishment for the diverse federal offenses is a matter for the discretion of Congress, and held that "Congress could no doubt make the simultaneous transportation of more than one woman in violation of the Mann Act liable to cumulative punishment for each woman so transported. The question is: Did it do so?" The Court, interpreting the statute (the Mann Act) as the "withdrawal of the facility" from interstate commerce, with social morality only being an incident of the exercise of that power, held that Congress had not done so, and also held that "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity ... It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment ... [This] merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction

into multiple offenses...." Thus, implicit in the decision is the holding that although there might be multiple "victims" of a defendant's single behavorial act of criminal misconduct, for double jeopardy purposes, such is or should be irrelevant and immaterial.

This Court's decisions comport with what the Supreme Court stated and held in *Bell*, supra. Recently, in *Ex parte Hayward*, 711 S.W.2d 652 (Tex.Cr.App.1986), this Court pointed out that Article III, Section 1 of the Texas Constitution delegates to the Legislature law-making authority that includes the right to define crime and fix penalties therefor. Thus, in this State, when the issue whether double jeopardy is applicable to "double" punishment, it must first be determined "What the Legislature has made the allowable unit of prosecution," as to whether there can be "double" punishment. My research has yet to reveal any expression by the Legislature that it intended to permit "double" punishment for a single criminal act of misconduct or that it intended such criminal misconduct as the appellant's to be punished more than once or that it intended, for the offense of involuntary manslaughter, "double" punishment when that statute has been violated by a defendant through one single act of criminal behavorial misconduct and multiple deaths are caused by the single act of misconduct. The reason for such omission probably lies in the fact that when a defendant commits a single criminal act of misconduct that violates only one criminal statute, that results in multiple deaths, the Legislature did not desire that such a defendant should have to encounter the inconvenience of multiple trials and also did not desire for the State to waste the public's funds, expend valuable judicial resources, risk inconsistent verdicts, encourage inexact prosecution, or permit a prosecuting attorney, such as here, who is obviously dissatisfied with the first punishment that was assessed, from continuing to "harass" the defendant until he finally finds a jury which will agree with his evaluation of what punishment should be assessed. In summary, because the Legislature has not spoken on the subject, it is presumed that it did not intend for multiple punishments to be inflicted for a single criminal act of misconduct.

Actually, however, the Legislature may have spoken on the subject when it enacted the "objectives of the Penal Code," see § 1.02(1)(C), one of which is "to prevent likely recurrence of criminal behavior." It stands to reason that if a defendant has committed a single criminal act of misconduct, and has been tried, convicted and punished for committing that act, further prosecution and further punishment will not "prevent [him] from repeating his act of criminal misconduct."

Prior to the decision of *Bell*, supra, the Supreme Court in *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 168, 21 L.Ed. 872 (1873), explored the scope of the double jeopardy clause of the Federal Constitution and concluded that its protection was not limited to the misguided historical notion of successive prosecutions, and that it also included a protection against "double" punishment. The Court stated the following:

> If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence ... there has never been any doubt of [this rule's] entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offence.

The Court further stated: "[W]e do not doubt the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it." 85 U.S., at 173.

My research has yet to reveal where the Supreme Court has departed from the above. Thus, for purposes of the Federal Constitution's Double Jeopardy Clause, where the intent of the Legislature is unclear, it is assumed that double punishment for the commission of a single criminal act of misconduct is not permitted. However, if the intent of the Legislature is clear that

double punishment is permissible, then, if imposed, such does not violate the Double Jeopardy Clause of the Federal Constitution. In this instance, the Legislature has not expressly spoken on the subject of double punishment for one who has committed a single criminal act that results in multiple deaths. Also see *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985); *Ladner v. United States,* 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958).

If the punishment presently provided for a violation of § 19.05(a)(2) is not severe enough, not less than 2 years nor more than 10 years' confinement in the penitentiary and a possible fine, it is the function of the Legislature to make the punishment for the crime of involuntary manslaughter more severe. However, it is not this Court's function to apply warped reasoning in order to make the penalty more severe.

Therefore, for double jeopardy purposes, to prevent "double" punishment from occurring, this Court should bar the State from reprosecuting the applicant for committing the offense of involuntary manslaughter.

I shall next discuss what effect the Double Jeopardy Clauses might have on multiple prosecutions for the commission of the same statutory offense.

In this instance, the facts from the applicant's first trial reflect that prior to the collision between the applicant's vehicle and the vehicle driven by Durrill he committed the single criminal act of misconduct of driving his motor vehicle while intoxicated. The applicant's goal was to drive his car from one point to another and, in so doing, both his condition and the manner in which he drove his vehicle constituted a single behaviorial incident. By accident or mistake the applicant's vehicle collided with

Durrill's. At the moment in time of the collision, all prior acts of misconduct committed by the applicant became merged into one indivisible act of misconduct as proscribed by § 19.05(a)(2). Thus, what were divisible acts of misconduct became a single indivisible act of misconduct. The jury's verdict finding the applicant guilty of involuntary manslaughter was obviously based on, inter alia, its implied finding that the applicant committed the above acts, and also on its implied finding that the applicant's act of intoxication caused the death of Watkins, the passenger, thus constituting a violation of § 19.05(a)(2). Consequently, if the impending trial is held, with the exception of the identity of the victim, the facts will be the same. For purposes of the Double Jeopardy Clauses, is there one or two offenses?

The majority opinion, without any legal reasoning, holds that "Each individual death [that occurred in this cause] constitutes a complete and distinct offense (albeit under the terms of the one statute) and as such each death constituted a separate 'allowable unit of prosecution.' *Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978)." Thereafter, the majority opinion erroneously holds: "Because we find that applicant has violated Section 19.05(a)(2), supra, twice, by causing the death of two individuals, we find that two distinct and separate offenses have been committed. Under these circumstances, the trial of applicant for the death of the second woman is not barred by the prohibition against double jeopardy." By these statements, the majority opinion makes it clear to all that its author simply does not understand the concept of double jeopardy, as it might be applied to prosecution for violating a single statutory offense through the use of a single act that represents criminal misconduct. I find that it is the focusing of his attention on the result of what happened, and not on the commission of the offense, that causes his opinion to become extremely flawed.

The majority opinion correctly observes that the Blockburger test, see *Blockburger*

*v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which provides "that where *the same act or transaction* constitutes a violation of *two* distinct statutory provisions the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not," (my emphasis), is not applicable to this cause for the simple reason that only one distinct statutory provision was violated by the applicant.

The majority opinion also correctly observes that *Ex parte Mc Williams*, supra, which abolished the doctrine of carving in Texas criminal jurisprudence, because it "increased crime," is also not applicable to this cause. *Mc Williams*, supra, is not applicable because the State in this instance does not seek to prosecute the applicant for committing different statutory criminal wrongs that occurred during the commission of one criminal transaction through one behavorial act, but, instead, seeks to prosecute the applicant a second time for violating the same criminal statute through one behavioral act, notwithstanding that he has already been convicted and punished for violating the identical criminal statute. See Fly, "Comment, The Texas Carving Doctrine," 6 *American Journal of Criminal Law* (1978); Baker, "One Transaction—One Conviction The Texas Doctrine of Carving," 25 *Baylor Law Review* (1973); Atkerson, "The Double Jeopardy Carving Doctrine is Abandoned in Texas," 14 *Texas Tech Law Review* (1983).

The majority opinion nevertheless seizes upon some language from *Ex parte Mc Williams*, supra, and holds: "[W]e find that two distinct and separate offenses have been committed." The majority opinion's holding actually represents legal magic. When one has been prosecuted, convicted and punished for violating a particular criminal statute, how can it be said that he twice violated that same statute? To hold that there might be multiple offenses, arising from the violation of the same criminal statute, is sophistry at its best.

In holding that "Each individual death constitutes a complete and distinct offense (albeit under the terms of one statute) and as such each death constituted a separate 'allowable unit of prosecution,' " the majority opinion cites *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), for this unique statement of law. The holding in *Sanabria*, supra, certainly does not support such statement. There, the issue was "whether the United States may appeal in a criminal case from a midtrial ruling resulting in the exclusion of certain evidence and from a subsequently entered judgment of acquittal", 98 S.Ct. at 2174, and the Supreme Court held it could not. 98 S.Ct., at 2174. Thus, *Sanabria* is not applicable to this cause.

I acknowledge that in *Ciucci v. Illinois*, 356 U.S. 571, 78 S.Ct. 839, 2 L.Ed.2d 983 (1958), the Supreme Court held that prosecuting and convicting the defendant in that cause in successive prosecutions for the murders of his wife and three children, who were found with bullet holes in their heads in a burning building, were not barred by the provisions of the Fourteenth Amendment's Due Process Clause. However, the issue before the Court was not whether the Federal Double Jeopardy Clause prohibited such, but, instead, was whether the Due Process Clause of the Fourteenth Amendment prohibited such from occurring. The Court, over strong dissents, held that such did not entail "fundamental unfairness." Thus, for Fourteenth Amendment purposes, the Supreme Court put its seal of approval on allowing a prosecuting attorney to prosecute the defendant as many times as he chose until his insatiable desire to obtain the death penalty had been satisfied. However, in light of the fact that the Federal Double Jeopardy Clause is now made applicable to the States, see *Benton v. Maryland*, supra, whether *Ciucci*, supra, is still good law is highly questionable.

Interestingly, soon after *Ciucci*, supra, was decided, the Illinois Legislature amended its statute. In *People v. Golson*, 32 Ill.2d 398, 207 N.E.2d 68 (1965), a case in

which the defendants engaged in but a single act of misconduct, resulting in multiple victims, the Illinois Supreme Court gave full force and effect to the new statute and held that "it is apparent that the State wishes to substitute its opinion of the adequacy of punishment for defendants' misconduct for that of the original jury. We feel that fundamental fairness to the accused cannot permit a second trial in this case." (76).

The real issue that is before this Court is whether, for purposes of the Double Jeopardy Clauses, the impending prosecution is for the "same offense" as the first offense that has already been prosecuted, i.e., whether the first statutory offense and the second offense are violations of the same criminal statute that occurred through one single act of criminal misconduct? Do they constitute the "same offense"?

For double jeopardy purposes, of course they are. In holding that they are not, I find that the majority opinion, when carefully studied, is a throwback to the Dark Ages. Interestingly, the majority opinion does not even comport with the double jeopardy law of the Soviet Union. See Sigler, *Double Jeopardy, The Development of a Legal and Social Policy* (1969).

I believe that those who join the majority opinion simply exhibit a lack of historical appreciation of the meaning of the respective Double Jeopardy Clauses. They should go and read, and absorb if that is possible, the authorities that Professor Thomas of the University of Tennessee at Martin sets out in footnote 8 of his law review article entitled "The Prohibition of Successive Prosecutions for the Same Offense: In Search of a Definition," 71 *Iowa Law Review* (January, 1986), at page 325, so that they can then appreciate the meaning of those clauses of the respective Constitutions, if that is possible. For emphasis, I again point out, as Professor Thomas did, "Historians have traced the origins of our constitutional guarantee against double jeopardy back to the days of Demosthenes ... [T]he principle of double jeopardy is at least 2,340 years old, and its roots can be traced to Greek, Roman, canon, and Hebrew law, with its evolution traceable back literally through the ages—from the Constitutional Convention, to the common law of England, through the Dark Ages...."

Everyone, except perhaps those who join or agree with the majority opinion, should agree that the prohibition provided by the Double Jeopardy Clauses is an essential part of an individual's protection against one form of governmental tyranny. See *Benton v. Maryland*, supra; Cantrell, "Double Jeopardy and Multiple Punishment: An Historical and Constitutional Analysis," 24 *South Texas Law Journal* (1983); Mc Kay, "Double Jeopardy: Are the Pieces the Puzzle?", 23 *Washburn Law Journal* (1983). The idea that there will be only one trial and one punishment for violating the same criminal statute has survived, at least until today, through the Dark Ages. But, as we read what comes to us from Washington and Austin, through opinions such as the majority opinion in this cause, it should now be apparent to all of us that, for Constitutional law purposes, we live in perilous times.

I can state with confidence that, for double jeopardy purposes, the words "same offense" mean or should mean "same offense". *State v. Rose*, 89 Ohio St. 383, 386–87, 106 N.E. 50, 51 (1914).

However, but as Professor Thomas pointed out, "same offense" does not always have the same meaning; it depends on the context in which the phrase is used. Although ordinarily unacceptable, because the attempt to create a single definition for the phrase "same offense" to answer all "same offense" questions creates more problems than it solves, see *Thomas*, supra, in this instance, given the facts of the first trial and the fact that the identical criminal statute will be involved in the impending trial, I find that in this instance "same offense" means "same identical statutory offense," i.e., the identical criminal statute will be involved, the elements of the offense will be the same, and the applicant's behavorial conduct in causing the accident will not be any different from that

established at the first trial. The sole and only different fact that will be presented at the second trial will be the severity of the injuries that the driver of the other vehicle sustained.

Generally speaking, the ban on successive prosecutions is necessary to protect the integrity of an acquittal, prevent harassment of defendants through repetitive litigation, and preclude an unauthorized second punishment when the first trial ends in a conviction, whereas the prohibition against multiple punishments imperil only the latter. *Thomas,* supra.

The majority opinion concludes that multiple injuries or deaths proximately caused by the defendant's conduct that occurred through one single act of criminal misconduct can give rise to multiple violations of the same criminal statute. The flaw in such conclusion lies in the fact that such reasoning should apply only to punishment, and not to prosecution. See *Wilkoff v. Superior Court of Orange County,* 38 Cal.3d 345, 211 Cal.Rptr. 742, 696 P.2d 134 (1985).

In this instance, what can often be troublesome in defining, the meaning of the term "same offense" should not be difficult to apply in this cause for the simple reason that the applicant's activity of a criminal nature violated but one law, § 19.05(a)(2), although the result of his activity was two deaths. Except for the identity of the victim, the proof that will be used on the second trial is in all things identical to the proof that was used at the first trial. Furthermore, except for the identity of the victim, the elements of the offense are identical. Given the common meaning of the words "same," something identical with or similar to another, and "offense," a transgression of law, *Webster's New Collegiate Dictionary,* the offense for which the applicant has been tried, convicted and punished and the impending law suit are for the "same offense".

If one closely analyzes the majority opinion, I believe that he will conclude as I have done that what the opinion actually does is to create a total legal fiction by making an implicit analogy to "splitting the atom bomb." In this instance, the majority opinion actually splits a single offense into two separate offenses, which legally cannot be done and has never before been done in Texas criminal jurisprudence. This, however, is not the same as authorizing the splitting of a single transaction into separate crimes so as to give the prosecution a choice of charges, which may be tried in one trial, so as to make multiple punishments possible for essentially one transaction. Thus, in the latter instance, what the prosecution does is "split an atom," which is legally permissible, whereas in the former instance, the "atom" cannot be legally split without causing much destruction to the Double Jeopardy Clauses of the Constitutions. See *Jones v. State,* 496 S.W.2d 566 (Tex.Cr.App.1973) (Roberts, J. "The science of physics used to teach that an atom was the smallest piece of matter and could not be split. Since Hiroshima and Nagasaki, we know better and now reject that doctrine.") Unfortunately for the author of the majority opinion, and those members of this Court who join his opinion, we are not today sitting at the feet of and listening to the great scientist Edward Teller explaining how an atom may be split. We are instead sitting as guardians of a right guaranteed by the Federal and State Constitutions; the fundamental and ancient right to be free from jeopardy.

In light of the fact that all of the elements of the second offense, with the exception of identity of the victim, are the same as the first offense, for which the applicant has been prosecuted, convicted and punished, the applicant will be reprosecuted for the "same offense". I would find and hold that a second prosecution based upon the same motor vehicle accident, even though more than one death resulted from the accident, clearly violates the Double Jeopardy Clauses of the Constitutions.

Furthermore, I would hold in this instance that reprosecution violates both the due process of law and the due course of law clauses of the respective Constitutions because such gives rise to the presumption

of prosecutorial vindictiveness. Cf. *Thigpen v. Roberts,* 468 U.S. 27, 104 S.Ct. 2916, 82 L.Ed.2d 23 (1984).

By the above, I do not overlook the fundamental concern that all of us should have for the outrage done the victims in this cause by the applicant's single act of criminal misconduct. However, for criminal law purposes, he has been tried, convicted and punished by a jury composed of his peers, and under our Constitutional law he should not be subjected to reprosecution. The prohibition of reprosecution will not, of course, prevent or preclude the relatives of the victims from seeking or invoking the other legal remedies available to them, in the event they have not already done so.

To the contrary holding by the majority opinion, I respectfully dissent.

I now turn my sights on other parts of the majority opinion.

As previously pointed out, the majority opinion "string cites" the reader to a multitude of foreign cases to support its holding that "the applicant has violated Section 19.-05(a)(2), supra, twice, by causing the deaths of two individuals [and that] two distinct and separate offenses have been committed." What at first glance appears to be an impressive array of supporting authority from foreign jurisdictions is in actuality an accumulation of analogous case law which, in most instances, is significantly distinguishable, either factually or procedurally, from this cause.

Reader, beware of the string cites found on pages 35 and 36 of the opinion! Read in context, the 32 string cites stand for the proposition that those cases are factually and procedurally just like our case. If you cannot trust the first case cited, how can you trust the other ones cited?

The very first case cited, *White v. State,* 378 So.2d 239 (Alabama Cr.App.1979), *writ denied* 378 So.2d 247, does not even involve the driver of a motor vehicle; it involves a hijacker on foot in a country grocery store who, through multiple acts, robbed several persons. Furthermore, in light of the very first sentence of the recent law review article by Hon. Richard Owens, staff attorney for Judge Sam Taylor of the *Alabama Court of Criminal Appeals,* entitled "Alabama's Minority Status: A Single Criminal Act Injuring Multiple Persons Constitutes Only a Single Offense," 16 *Cumberland Law Review* (1985), in which *White v. State,* supra, is not even mentioned, which states: "The majority of states allow multiple convictions for a single criminal act that injures more than one person; Alabama is part of the small minority of states allowing only one conviction," how the author of the majority opinion can state that Alabama is in the "majority" escapes me for the moment. Once again, Texas is singled out as being only one of three States of the Union that is out of step, see Taylor's footnote 23. Perhaps, if Texas continues to be singled out as being out of step with either 47 or 48 of the other States, then maybe the other States, and not Texas, are out of step. Interestingly, in 1892 Texas appeared to be in step with the majority of the States. Taylor points out in footnote 17 that in 1893 the renowned Bishop "stated the view of the authorities to be that in one transaction an individual may commit distinct offenses on different persons and be separately punished on each. If, however, 'one by a single volition' discharges a shotgun full of peas into a crowd and 50 different people are hit, it would be 'startling' to assert that the offender could be punished 50 times. The result 'would violate the spirit, if not the letter,' of the no double jeopardy clause." I find that Taylor's article is actually premised on the erroneous proposition that if an individual *intentionally* injures more than one person, in Alabama at least, under no circumstances can he be prosecuted or punished for committing more than one offense. Taylor's article does make a strong plea that one who commits a single act that injures more than one person should be "*punished* commensurate with the crime and the amount of harm he inflicts," (110), (my emphasis), with which statement I dare say that no rational person would disagree.

The majority opinion, which is almost totally without any legal reasoning, opts to rely heavily upon *State v. Irvin*, 603 S.W.2d 121 (Tenn Sup.Ct.1980), which itself is totally devoid of any legal reasoning. For Texas law purposes, the majority's reliance upon *Irvin*, supra, is woefully misplaced for the simple reason that except in the limited instance of property offenses, Texas does not have mandatory joinder of offenses. See Perrin, "Joinder of Offense Under Article 21.24 of the Texas Code of Criminal Procedure: A Return to the Common Law," 3 *Texas Tech Law Review* (1986). Also see *Callins v. State* (Tex. Cr.App., No. 69,023, July 2, 1986). By the opinion in *Irvin*, Tennessee apparently has mandatory joinder of offenses. Furthermore, the punishments assessed in *Irvin*, supra, were made concurrent and not consecutive. Lastly, *Irvin* does not discuss the doctrines of double jeopardy or collateral estoppel, which causes me to point out to the reader of the majority opinion that of the 31 cases string cited, at least 14 predate the decisions of *Benton v. Maryland*, supra, and *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

Why the dates of the cases string cited are so important is, for example, the fact that in the string cites we find the decision of *State v. Hoag*, 21 N.J. 496, 122 A.2d 628 (1956), which had many followers, see *State v. Ashe*, 350 S.W.2d 768 (Mo.1961), which interestingly is the State case of *Ashe v. Swenson*, supra. Also see *Mc Hugh v. State*, 160 Fla. 823, 36 So.2d 786 (1948), one of the string cites, which has probably been overruled by *Ashe v. Swenson*, supra.

I shall not dissect each of the string cited cases because although I find that the number of cases cited is impressive, the author of the majority opinion has overlooked the fact that in Texas we have procedural, statutory, and substantive law differences from many other jurisdictions, namely, we do not have mandatory joinder of offenses. See, for example, *Callins v. State*, supra, and *Ex parte Crosby and Erwin*, 703 S.W.2d 683 (Tex.Cr.App.1986)

(Although defendants robbed multiple victims, they could only be prosecuted for the robbery of one victim.) Also see "Multiple Prosecution and Punishment of Unitary Criminal Conduct—Minn.Stat. Section 609.-035, 56 *Minnesota Law Review* (1972). Cf. *Neal v. State*, 55 Cal.2d 11, 9 Cal.Rptr. 607, 357 P.2d 839 (1961), one of the many string cites found in the majority opinion, which points out that California has a special statute governing punishment for committing multiple crimes. Furthermore, also overlooked by the author of the majority opinion is the fact that several of his string cited cases, like *State v. Pierce*, 199 Mont. 57, 647 P.2d 847 (1982), involved prosecutions under different statutes, whereas in this cause the prosecution will be under the same identical statute under which the applicant has already been tried, convicted and punished. If one subscribes to the view that there is a majority rule in this area of the law, he might take a moment and read the annotation entitled "Single Act Affecting Multiple Victims," 8 *A.L. R.4th* 960, and the case cited therein. He might also go and read some of what the great Stumberg wrote, as well as the case of *Scott v. Shepherd*, 2 W.Bl. 892 (1773), (the famous squib case, which discusses the doctrine of "alternative danger.")

Notwithstanding that it might be shocking to any sensible person for an individual without any intent to do harm through a single act of misconduct that results in multiple victims, and be punished only for the single act, the Legislature of this State to date has not seen fit to authorize a more stringent punishment for this type conduct. As parodied by Gilbert and Sullivan in the Mikado, the present object is "[t]o let the punishment fit the [statutory crime that was violated]."

Given the present state of our law, the public policy of the State has been served in the applicant's case, and the prosecution should not be permitted to go to the well a second time and get one more bite at Rathmell, which the majority of this Court allows, to which I respectfully dissent. The majority opinion will obviously appease the

insatiable appetite of the prosecuting attorney in this cause by permitting him to further prosecute and punish the applicant for his single act of misconduct that violated only one criminal statute. The frightening import of the opinion, however, is that it effectively nullifies the Double Jeopardy Clause of the Texas Constitution and clashes headon with the same provision of the Federal Constitution.

ONION, Presiding Judge, dissenting.

These proceedings involve the improper use of a pre-trial application for writ of habeas corpus, *Ex parte Robinson*, 641 S.W.2d 552 (Tex.Cr.App.1982), notwithstanding. The writ of habeas corpus cannot be used as a substitute for an appeal from a conviction, much less an interlocutory appeal, as in effect the case at bar is, though dressed in the cloak of a habeas corpus appeal.

*Robinson*, a panel opinion of this Court, in which a motion for leave to file a motion for rehearing was never filed, has not yet been fully reviewed by this Court en banc. *Robinson* was wrongly decided. Its analysis was not in-depth and its reasoning was flawed. To permit an appeal from a pre-trial order in a habeas corpus proceedings to be used as an office for an interlocutory or piecemeal appeal against which there is a firm policy and a strong body of law, can only cause delays and disruptions attendant upon such "appeal" which are inimical to the effective and fair administration of justice in criminal cases. The fact that a "double jeopardy" issue is involved does not wave a magic wand and change things or reality. The pre-trial habeas application was filed on September 2, 1983, and the matter, over three years later, is still in the appellate courts. The offense charged has never been tried. Who first said "Justice delayed is justice denied"?

It is time for this Court to stand back and take a long look at the panel opinion in *Robinson*.

*The Right of Appeal*

There is no federal constitutional right to state appellate review of state criminal convictions. *McKane v. Durston*, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894); *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *Estelle v. Dorrough*, 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975), *reh. den.* 421 U.S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 790, and *on remand*, 512 F.2d 1061 (5th Cir.1975); *Jones v. State*, 630 S.W.2d 353 (Tex.Cr.App.1982). The United States Supreme Court has never held that states are constitutionally required to provide a right to appellate review. *Griffin v. Illinois*, supra; *Miracle v. Estelle*, 592 F.2d 1269 (5th Cir.1979).

It is, of course, a fundamental principle of due process and equal protection that once avenues of appellate review are established, they must be kept free of unreasoned distinctions that can only impede open and equal access to the courts. *Griffin v. Illinois*, supra; *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Lane v. Brown*, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); *Rinaldi v. Yeager*, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Miracle v. Estelle*, supra.

The Texas Constitution does not refer directly to the right of a defendant to appeal a criminal conviction.[1] It does provide that the appellate jurisdiction of the Court of Criminal Appeals and the Courts of Appeals is subject to such exceptions and such regulations as provided in the Constitution or as prescribed by law. See Article I, §§ 5 and 6, Tex.Const.; 21 Tex.Jur.3rd, Crim.Law, § 1606, p. 403.

As can be seen, the Legislature can make such exceptions and regulations regarding the appellate jurisdiction of the Court of Criminal Appeals and the Court of Appeals as it desires. See and cf. *Armes v. State*,

---

1. Article I, § 11a, Tex.Const., provides for right of appeals to the Court of Criminal Appeals for review of any judgment or order denying bail under the provisions thereof. This, however, is limited to questions of bail and does not address appeals from criminal convictions.

573 S.W.2d 7 (Tex.Cr.App.1978); *Ex parte Spring,* 586 S.W.2d 482 (Tex.Cr.App.1978); *Ex parte Firmin,* 60 Tex.Cr.R. 222, 131 S.W. 1116 (Tex.Cr.App.1910).

Thus, generally speaking, "Appeals are within the control of the Legislature, and an appeal is a privilege, dependent on statute." 21 Tex.Jur.3rd, Crim.Law, § 106, p. 403; *Powell v. State,* 99 Tex.Cr.R. 276, 269 S.W. 443 (1925). The only right of a defendant to appeal in a criminal case is a statutory right. See generally Article 44.02, V.A.C.C.P.; *Ex parte Bennett,* 211 S.W. 934 (Tex.Cr.App.1919); *Powell v. State,* supra; *Ex parte Minor,* 115 Tex. Cr.R. 634, 27 S.W.2d 805 (1930); *Ex parte McKenzie,* 115 Tex.Cr.R. 315, 29 S.W.2d 771 (1930); *Savage v. State,* 155 Tex.Cr.R. 576, 237 S.W.2d 315 (1951); *Ex parte .Paprskar,* 573 S.W.2d 525 (Tex.Cr.App. 1978); *Ex parte Spring,* 586 S.W.2d 482 (Tex.Cr.App.1978).

"In the exercise of its powers, the Legislature may impose proper restrictions on the right of appeal, prescribe regulations in regard to appellate jurisdiction, and promulgate rules to be observed in prosecuting an appeal." 21 Tex.Jur.3rd, Crim.Law, § 1606, p. 404; *De Silva v. State,* 98 Tex.Cr.R. 499, 267 S.W. 271 (1925).

It has been said that in absence of constitutional inhibition, *the Legislature may* prescribe the cases in which parties shall be entitled to bring a cause for review, prescribe courts to which causes shall be brought, and *impose such restrictions as the Legislature may see fit, even when federal rights or questions are involved. Millican v. State,* 145 Tex.Cr.R. 195, 167 S.W.2d 188 (1943).[2]

Appeals are normally limited to a person convicted of offenses and those denied release under writ of habeas corpus. *De Silva v. State,* 98 Tex.Cr.R. 499, 267 S.W.

271 (1924). It has been said that without a sentence or a final judgment of conviction in a criminal case, the Court of Criminal Appeals is without jurisdiction to entertain an appeal. *Bratt v. State,* 422 S.W.2d 453 (Tex.Cr.App.1968); *Thompkins v. State,* 87 Tex.Cr.R. 502, 222 S.W. 1103 (1920); *Cornutt v. State,* 117 Tex.Cr.R. 160, 38 S.W.2d 91 (1931); Article V, § 5, Vernon's Anno. Tex.Const., Note 6, and cases there cited; Article 44.02, V.A.C.C.P., note 30. Generally the Court of Criminal Appeals will not review, before trial, conviction and an appeal, any ruling of the trial court. *Ex parte Conner,* 439 S.W.2d 350 (Tex.Cr. App.1969); *Ex parte Fertitta,* 167 Tex. Cr.R. 483, 320 S.W.2d 839 (1959). Interlocutory appeals are not permitted. *Scott v. State,* 158 Tex.Cr.R. 69, 253 S.W.2d 275 (1953); *Ex parte Jones,* 449 S.W.2d 59 (Tex.Cr.App.1970); *Williams v. State,* 464 S.W.2d 842 (Tex.Cr.App.1971).

### Habeas Corpus Cannot Be Used as a Substitute for an Appeal

It is also well established that a writ of habeas corpus cannot be used as a substitute for an appeal or to serve the office of an appeal. Article 11.01, V.A.C.C.P., notes 6, 15; *Ex parte Hendrix,* 64 Tex.Cr.R. 452, 142 S.W. 570 (Tex.Cr.App.1912); *Ex parte Beamer,* 116 Tex. 39, 285 S.W. 255 (1926); *Ex parte Ricketts,* 148 Tex.Cr.R. 569, 189 S.W.2d 872 (1945); *Ex parte Meadows,* 149 Tex.Cr.R. 86, 191 S.W.2d 731 (1946); *Ex parte Napier,* 157 Tex.Cr.R. 73, 246 S.W.2d 878 (1952); *Ex parte Dunn,* 261 S.W.2d 715 (Tex.Cr.App.1953); *Mixon v. State,* 365 S.W.2d 364 (Tex.Cr.App.1963).

Writ of habeas corpus will not be used after indictment to prevent trial on the merits. *Ex parte Morrell,* 135 Tex.Cr.R. 179, 118 S.W.2d 315 (1938), and the appellate court will decline to dispose of controversy on habeas corpus which could have

---

**2.** A few examples of restrictions on the statutory right of appeal come to mind. Under Article 44.02, V.A.C.C.P., where a defendant has been convicted upon his plea of guilty or nolo contendere before the court and his punishment has been assessed in accordance with a plea bargain a defendant may not appeal unless with permis-

sion of the trial court "except on those matters which have been raised by written motion filed prior to trial." There is no appellate review of an order deferring adjudication of guilt and placing a defendant on probation. *McDougal v. State,* 610 S.W.2d 509 (Tex.Cr.App.1981).

been brought to court for review in regular channels of appeal. *Ex parte Taylor*, 131 Tex.Cr.R. 365, 99 S.W.2d 310 (1937); *Ex parte Meers*, 129 Tex.Cr.R. 465, 88 S.W.2d 100 (1936).

Primarily where jurisdiction of the court is appellate, and generally, where complete relief against any supposed error will be afforded by appeal from a conviction, the writ of habeas corpus is not available. *Ex parte McKay*, 82 Tex.Cr.R. 221, 199 S.W. 637 (1918). Habeas corpus is an extraordinary writ and generally does not lie where relief may be had or could have been procured by resort to another remedy. *Ex parte Wilcox*, 128 Tex.Cr.R. 146, 79 S.W.2d 321 (1935).

It has been held that a plea to the jurisdiction filed with an application for writ of habeas corpus should be made a part of the trial record of the case upon its merits and shall not be heard in a separate proceedings. *Ex parte Rodriguez*, 413 S.W.2d 919 (Tex.Cr.App.1967).

In *Ex parte Jones*, 449 S.W.2d 59 (Tex. Cr.App.1970), the Court of Criminal Appeals refused to review an interlocutory order denying a motion to set aside an indictment for lack of a speedy trial as the same was reviewable only on appeal after conviction, not by habeas corpus proceedings. See *Williams v. State*, 464 S.W.2d 842 (Tex.Cr.App.1971). See also *Ex parte Fertitta*, 167 Tex.Cr.R. 483, 320 S.W.2d 839 (Tex.Cr.App.1959).

In *Ex parte Conner*, 439 S.W.2d 350 (Tex.Cr.App.1969), this Court refused to review by habeas corpus an interlocutory order denying pre-trial motion to suppress evidence.

Former jeopardy, acquittal or conviction cannot be availed of by habeas corpus. Article 11.01, V.A.C.C.P., note 31, and cases there cited. A defendant will not be granted a writ of habeas corpus on a plea of former jeopardy as such question is one for the trial court during the prosecution under the indictment. *Ex parte Mitchum*, 91 Tex.Cr.R. 62, 237 S.W. 936 (1922); *Mollohan v. State*, 10 S.W.2d 86 (Tex.Cr.App. 1928); *Ex parte Hamlin*, 142 Tex.Cr.R.

185, 152 S.W.2d 334 (1941). A claim of former conviction cannot be raised on habeas corpus. *Ex parte Sawyer*, 386 S.W.2d 275 (Tex.Cr.App.1965); *Ex parte Spanell*, 212 S.W. 172 (Tex.Cr.App.1919), held that a defendant, acquitted of murder, and subsequently indicted, could not by habeas corpus proceedings raise the issue of autrefais acquit as the appropriate remedy was a special plea in the court in which the second indictment is pending.

### Ex parte Robinson

*Ex parte Robinson*, 641 S.W.2d 552 (Tex. Cr.App.1982), was the case with which this discussion ensued. It was a panel opinion never reviewed by this Court en banc. It involved a pre-trial application for writ of habeas corpus in which the applicant sought to raise his double jeopardy or prior conviction claim before trial on the indictment he was attacking. The record reflects Robinson was indicted in the 140th District Court of Lubbock County for carrying a handgun on premises licensed for the sale of alcoholic beverages and for aggravated assault in a second count. The record does not reveal whether Robinson filed a plea to the jurisdiction, a plea of double jeopardy or a special plea of former conviction. He did file in the 140th District Court an application for writ of habeas corpus alleging that he had been afforded an examining trial in a justice of the peace court on the same charges, and that the Justice of the Peace had found no probable cause to bind him over to the grand jury and had discharged him. Despite the fact the Justice of the Peace was sitting as a magistrate in an examining trial only, and his court was not a court of competent jurisdiction over the trial of felonies, Robinson urged that as a result of the actions of the Justice of the Peace the State was barred from seeking an indictment on said charges by virtue of the Fifth and Fourteenth Amendments of the United States Constitution and the doctrine of collateral estoppel.

The 140th District Court, after a hearing, denied relief, and Robinson appealed the

order entered in the habeas corpus proceedings. Robinson, without noting that habeas corpus cannot be used as a substitute for appeal, much less an interlocutory appeal, plunged ahead. Ignoring a large body of law to the contrary, the panel held that the applicant could raise and appeal by habeas corpus proceedings a double jeopardy claim before trial on the indictment because the Fifth Amendment right not to be exposed to double jeopardy must be reviewable before that exposure occurs and that habeas corpus was the proper remedy.

Neither party questioned the procedure used and briefed only the double jeopardy issue. The panel found no merit to the claim that the examining trial placed Robinson in jeopardy. The panel could have easily said that, regardless of the procedure utilized, the contention was without merit, which it clearly was. Instead, the panel turns our established procedure on its head by its gratuitous holding.

The panel relied heavily upon *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). The reliance was clearly misplaced. *Abney,* a federal case, did not involve habeas corpus proceedings. At the outset Chief Justice Burger, writing for the Court, stated:

> "We granted certiorari to determine whether a pretrial order denying a motion to dismiss an indictment on double jeopardy grounds is a final decision within the meaning of 28 U.S.C., Sec. 1291 and thus immediately appealable."

The Court concluded:

> "We therefore hold that pretrial orders rejecting claims of former jeopardy, such as that presently before us, constitute 'final decisions' and thus satisfy the jurisdictional prerequisites of Sec. 1291."

The *Abney* Court recognized there was no constitutional right to an appeal, and an appeal in a criminal case in the federal system is purely a creature of the statutes, and one exercising the statutory right must come within the terms of the applicable statute. The Court further acknowledged that finality of judgment has been required as a predicate for federal appellate jurisdiction and that there has been a firm congressional policy against interlocutory or "piecemeal" appeals, that the finality of judgment requirement has been particularly stringent in criminal prosecutions because of the delays and disruptions due to interlocutory appeals.

The *Abney* Court realized that the pretrial order denying the motion to dismiss an indictment on double jeopardy grounds lacked the traditional finality considered indispensable to appellate review, but decided such an order falls within the "small class of cases" constituting the "collateral order" exception to the federal final judgment rule announced in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1948). In so holding the Court discussed the Fifth Amendment and the nature of a double jeopardy claim; and found the pre-trial order to be a final rejection of the double jeopardy claim.

As can clearly be seen, the *Abney* decision dealt with federal appellate review and turned on the construction of a federal statute. It did not extend the Fifth Amendment and did not impose upon the states by constitutional mandate the same requirement as an exception to the finality of judgment rule. *Abney,* contrary to all other law, did not require the states to provide a system of appellate review in criminal cases, nor require that having provided one, states must as a result of the Fifth Amendment made applicable to the states by virtue of the Fourteenth Amendment, provide for interlocutory appeals or habeas corpus proceedings for double jeopardy claims as an exception to the "Cohen" rule applicable to federal cases.

The *Robinson* panel of this Court in relying upon *Abney* egregiously erred in stating:

> "We are compelled to hold that there is a Fifth Amendment right not to be exposed to double jeopardy, and that it must be reviewable before that exposure occurs. The appellant has invoked the proper procedure to challenge one of the incidents of such exposure. This Court

has jurisdiction of the appeal. Therefore, we must consider the merits."

*Abney* turned on the construction of a federal statute and did not compel this Court to apply the Fifth Amendment so as to authorize interlocutory appeals, and nothing in *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982), cited by the panel, changed that holding. Habeas corpus, of course, was not used in *Abney* and was not the proper procedure to be used in substitution of an appeal.

In *Spradling v. State*, 634 S.W.2d 89 (Tex.App.—Beaumont 1982) (no pet.), there was an attempted interlocutory appeal from a pre-trial order denying the "Plea of Former Conviction." There the Court of Appeals recognized that this Court has long adhered to the rule that it has jurisdiction to review the trial court's ruling only after a conviction and did not entertain appeals from interlocutory orders, citing *Ex parte Jones*, 449 S.W.2d 59, 60 (Tex.Cr. App.1970), and *Ex parte Conner*, 439 S.W.2d 350 (Tex.Cr.App.1969).

The Court of Appeals in its opinion by Justice Keith correctly noted *Abney* turned on the construction of a federal jurisdiction statute and not upon the Constitution of the United States.

Subsequently Spradling's motion for leave to file a writ of prohibition was denied by the Court of Criminal Appeals. Still later petition for writ of certiorari was denied by the United States Supreme Court without written opinion. *Spradling v. Texas*, 455 U.S. 971, 102 S.Ct. 1482, 71 L.Ed.2d 686 (1982). Justice Brennan joined by Justice Marshall dissented to the denial of the writ. In his written dissent Justice Brennan noted that in most applications the Texas rule barring interlocutory review raises no federal constitutional issue, and that in *Abney* the Court had no need to reach the constitutional question, but felt *Abney* had "constitutional overtones." For these reasons Justice Brennan dissented to the denial of the writ and would have set *Spradling* for oral argument.

It is clear that the majority of the United States Supreme Court does not view *Abney* as did the panel of this Court in *Robinson*, which extended the Fifth Amendment into areas which the court on the Potomac has never considered that it protruded.

In most clear-cut double jeopardy situations the State is not likely to seek a second prosecution. In cases where the defendant believes he has a valid double jeopardy claim he may file a plea to the jurisdiction, a special plea of former conviction, former acquittal. See Articles 27.05, 28.01, 28.13, V.A.C.C.P. If the trial court grants his plea or motion, then school is out, for the State has no right of appeal. Article V, § 26, Tex.Const.; Article 44.01, V.A.C.C.P. It is only if the trial court determines that the plea or motion is without merit that the trial proceeds.

Giving special dispensation to pre-trial claims of double jeopardy over all other claims of violations, constitutional and statutory rights may be alluring to the person who does not think the problem through. There has long been a firm legislative policy against interlocutory or "piecemeal" appeals in criminal cases which can only disrupt and delay the trial of criminal charge, sometimes for years such as in the instant case. The rule of finality of judgment prior to appeal was designed to avoid just such disruptions and resulting delay. Inroads upon such a rule are inimical to the effective fair and prompt administration of criminal justice in this state.

Under *Robinson* a defendant may file his pre-trial plea of former jeopardy, former acquittal or conviction, etc., in the trial court where the indictment is pending. It may be based on non-meritorious or even silly grounds as in *Robinson*. If it is overruled by the trial court, he has no right to an interlocutory appeal therefrom, but if he desires a built-in continuance or a delay of the trial of the case, he may proceed to file an application for a writ of habeas corpus alleging the same contentions as in his overruled pre-trial motion either in the court where the indictment is pending, or as *Robinson* indicates, another district

court in the county where the offense or offenses allegedly had been committed. If relief is denied, then an appeal from the habeas corpus order is taken to a Court of Appeals. After time is consumed in preparation of the appellate record and disposition of the appeal by the Court of Appeals, then it is possible for the defendant to file a petition for discretionary review in this Court. More time is consumed before said petition is passed upon by this Court, even though the claim may be without merit or even silly. Meanwhile the trial of the criminal case has not commenced. This is a bird's nest on the ground for some defendants, giving them complete control over the disposition of the case for awhile at least. In the instant case, as earlier noted, the time consumed has already been over three years.

I would overrule *Robinson*, hold the habeas corpus cannot be used as a substitute for an appeal, and that this Court is without jurisdiction to entertain these proceedings and dismiss the appeal.

I dissent to the majority's failure to consider this vital issue.

TOM G. DAVIS, J., joins this opinion.

CLINTON, Judge, dissenting.

That the Supreme Court of Tennessee recently decided to reject principle in favor of expediency is no reason to change the law of jeopardy in Texas. To resolve the issue presented here the majority need only to look to and apply principles of jeopardy laid down in our own Constitution, statutes and decisions. It will find that the result oriented decision in Tennessee is contrary to those principles.[1]

Recasting earlier proscriptions against double jeopardy, the Constitution of 1876 provides guarantees unknown at common law and broader than pleas of *autrefois acquit* and *autrefois convict, viz:*

"No person, for the same offense, shall be twice put in jeopardy of life or *liberty*, nor shall a person be again put to trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction."

Article I, § 14, Constitution of the State of Texas.[2]

The constitutional prohibition is also a legislative bar in Article 1.10, V.A.C.C.P. Additional procedural protections include a special plea of jeopardy, Article 27.05, and the mandate in Article 28.13: "A former judgment of acquittal or conviction in a court of competent jurisdiction shall be a bar to any further prosecution for the same offense ..."

The key to all those provisions is, of course, the meaning of "the same offense." The majority argues that *one* act and its accompanying mental state constituting an element of an offense may *twice* violate the statute prescribing that offense.

First, reading V.T.C.A. Penal Code, § 19.05(a)(2), along with the statutory definition of "individual," the majority quickly finds:

"It is clear from the language of these statutes that the Legislature has determined and intends that the offense of involuntary manslaughter (as defined in

1. The majority says it adopts "the reasoning of the Supreme Court of Tennessee," but that which it excerpts smacks more of opinion than reasoning. That a result "seems illogical to us" is of little moment. Legislative intent controls judicial construction. *Seay v. Hull,* 677 S.W.2d 19, 25 (Tex.1984). While there may be more than one "homicide" when two persons are killed by same conduct of an accused, still the Legislature may have intended to prescribe only one offense under a given statute.

2. Much like the Double Jeopardy Clause in the Fifth Amendment, the Constitution of the Republic of Texas provided: "No person, for the same offence, shall be twice put in jeopardy of life and *limbs*." (All emphasis is mine throughout unless otherwise indicated.) Ninth Declaration of Rights, 3 Vernon's Texas Constitution 536. Article I, § 12, Constitution of 1845, added "nor shall a person be again put upon trial for the same offense after a verdict of not guilty." *Id.,* at 545. Also similar were Article I, § 12, Constitution of 1861, *id.,* at 575; Article I, § 12, Constitution of 1866, *id.,* at 603; Article I, § 12, Constitution of 1869, mercifully omitting "limbs," however, *id.,* at 641. See generally Interpretive Commentary following § 14.

Section 19.05(a)(2), supra) is completed with the death of a single individual." So far so good. Such is exactly the result statutorily contemplated and required to constitute the offense of involuntary manslaughter by accident and mistake on the part of one operating a motor vehicle while intoxicated.

Then, finding the timing of *another* death is inconsequential, the majority makes a quantum leap to its ultimate conclusion, *viz:*

"Each individual death constitutes a complete and distinct offense (albeit under the terms of the one statute) and as such each death constituted a separate 'allowable unit of prosecution.' *Sanabria v. United States* ..."[3]

In Texas the rule is that forbidden conduct and culpability prescribed in one statute do not constitute two offenses on the happenstance that two individuals are victims. In homicide cases for more than a hundred years the guiding principle has been that approved by the former Court of Appeals and consistently followed by the Court, *viz:*

"If it be true, as we suppose it is, that the killing of two or more persons by the same act constitutes but one crime, then it follows that the State cannot indict the guilty party for killing one of the persons, and after conviction or acquittal indict him for the killing of the other; for the State cannot divide that which constitutes but one crime, and make the different parts of it the bases of separate prosecutions."

*Rucker v. The State*, 7 Tex.App. 549, 553 (Ct.App.1880), and *Spannell v. State*, 83 Tex.Cr.R. 418, 203 S.W. 357, 359 (1918), both quoting *Clem v. The State*, 42 Ind. 420.

"The true criterion in pleas of this character is, if the act for which defendant is being prosecuted is the same violence or act relied upon in the case wherein he was previously convicted ... this prosecution could not stand ... [citations omitted]."

*Keaton v. State*, 41 Tex.Cr.R. 621, 57 S.W. 1125, 1128–1129 (1900). Accord: *Cook v. State*, 43 Tex.Cr.R. 182, 63 S.W. 872 (1901); see also host of authorities cited and discussed in *Spannell v. State*, supra; cf. *Alsup v. State*, 120 Tex.Cr.R. 310, 49 S.W.2d 749 (1932), *Augustine v. State*, 41 Tex.Cr.R. 59, 52 S.W. 77 (1899), and *Ashton v. State*, 31 Tex.Cr.R. 482, 21 S.W. 48 (1893).[4]

---

**3.** Let it be as clearly understood that except the term was reused by the Supreme Court in *Sanabria*, its decision does not support the conclusion just reached by the majority. In context what the Supreme Court said is actually more supportive of present Texas law, *viz:*

"But once Congress has defined a statutory offense by its prescription of the 'allowable unit of prosecution,' [citations and notes omitted throughout] that prescription determines the scope of protection afforded by a prior conviction or acquittal. Whether a particular course of conduct involves one or more distinct offenses under that statute depends on *this congressional choice.*

The allowable unit of prosecution under § 1955 is defined as participation in a single 'illegal gambling business.' Congress did not ... define discrete acts of gambling as independent federal offenses.... It is participation in the gambling business that is a federal offense, and it is only that the gambling business must violate state law. And ... participation in a single gambling business is but a single offense, 'no matter how many state statutes the enterprise violated.'"

437 U.S. at 70–71, 98 S.Ct. at 2181–2182. Accordingly, the Supreme Court rejected the theory "that there was a single gambling business, which engaged in both horse betting and numbers betting," so that an acquittal for the former would not bar prosecution on the latter, because:

"'The Double Jeopardy Clause is not such a fragile guarantee that its limitations [can be avoided] by the simple expedient of dividing a single crime into a series of temporal or spatial units,' [citation omitted] or, as we hold today, into 'discrete bases of liability' *not defined as such by the legislature.*"

*Id.*, at 72, 98 S.Ct. at 2183.

**4.** Since the cases deal with former jeopardy, they cannot be lightly dismissed by alluding to "abolition of the carving doctrine." Carving basically applied only after a conviction for any one of two or more *offenses* arising out of a single *"transaction,"* whereas jeopardy is concerned with successive prosecutions, convictions and punishments for *"the same offense."*

And in that connection, the majority fails to notice that in *State v. Irvin*, 603 S.W.2d 121

The question, therefore, recurs: In defining the statutory offense of involuntary manslaughter as it did here what "allowable unit of prosecution" did the Legislature prescribe to provide "the scope of protection afforded by a prior conviction or acquittal?" The question was neither posed nor answered by the Supreme Court of Tennessee in *Irvin*, so its "reasoning" is inapposite. Thus the majority here provides an "answer" *sans* reasoning.

In the kind of involuntary manslaughter denounced by § 19.05(a)(2) the forbidden act of operating a motor vehicle while intoxicated is accompanied by a mental state of "recklessness per se," Practice Commentary, 2 V.T.C.A. Penal Code 149–150, the offense being complete when such conduct causes the death of an individual. *Parr v. State*, 575 S.W.2d 522, 526–526 (Tex.Cr. App.1978) and *Hardie v. State*, 588 S.W.2d 936, 938 (Tex.Cr.App.1979).[5] There is thus commonality in every element of the offense when more than one victim dies. Where is there any evidence that the legislative choice was to divide that particular course of conduct into more than one distinct offense under the statute?

In 1941 the Legislature chose to make conduct that caused death the gravamen of the former offense. Acts 1941, 47th Leg., Ch. 507, p. 819, § 3, article 802c, 1925 Penal Code, as amended, provided in pertinent part:

> "Any person who drives or operates a motor vehicle ... while [he] is intoxicated or under the influence of intoxicating liquor, and [while doing so] shall through accident or mistake do another act which if voluntarily done would be a felony shall receive the punishment affixed to the felony actually committed."

(Tenn.1980), all charges were consolidated for *a single trial* and separate sentences imposed were to run concurrently. *Id.,* at 122. As to that latter feature, right after the material quoted by the majority the Supreme Court of Tennessee pointed out:

> "This is not to suggest that there need be successive punishments in every case involving multiple victims."

That determination was left to sentencing authorities.

Thus intoxication was the essential element of the offense, along with there being a causal connection between intoxication and death of another. *Long v. State*, 152 Tex. Cr.R. 356, 214 S.W.2d 303, 304 (1948) and *McWhirter v. State*, 147 Tex.Cr.R. 268, 180 S.W.2d 364, 365 (1944). Intoxication and causal connection were emphasized in a pattern charge to the jury. See Branch's Annotated Penal Code (2nd Ed.) 512, § 1505.1. Though multiple victims, there was yet only one offense; some scriveners named them all in one indictment. See, e.g., *Laurel v. State*, 170 Tex.Cr.R. 374, 341 S.W.2d 181 (1960), and *Castaneda v. State*, 170 Tex.Cr.R. 323, 340 S.W.2d 489 (1960).

Similarly, in prescribing elements of negligent homicide under former law, articles 1230–1243, emphasis was on "negligence and carelessness caus[ing] the death of another," article 1231, and the Legislature provided "there must be an apparent danger of causing the death of the person killed or some other," article 1232. The gist of the offense was negligence in performing some act. *Menefee v. State*, 129 Tex.Cr.R. 375, 87 S.W.2d 478, 479–480 (1935); see *Pehl v. State*, 153 Tex.Cr.R. 553, 223 S.W.2d 238 (1949).

Like its predecessor statute, operating a motor vehicle while intoxicated is still the essential conduct element forbidden by § 19.05(a)(2). Certainly, it does not expressly "divid[e] a single crime into ... 'discrete bases of liability.'" *Sanabria*, supra. Given the consistent development of Texas law to effectuate jeopardy principles, one is hard pressed to find that, having so carefully defined offenses and crafted culpable acts in the "new" Penal Code, the Legislature would blithely disregard all

5. While the Court has said that "involuntary manslaughter can be established without proof of a culpable mental state [and] proof that the accused caused the death of a person by reason of operating a motor vehicle while intoxicated is sufficient," *Ex parte Ross*, 522 S.W.2d 214, 218 (Tex.Cr.App.1975), it is clear that the Legislature provided the latter conduct is by definition "reckless."

that in this particular instance, and authorize successive prosecutions, convictions and punishments for the same criminal conduct.[6]

I would hold that a second trial in these circumstances is prohibited by jeopardy principles in Texas law long adhered to by the Court. See *Ex parte Crosby & Erwin,* 703 S.W.2d 683 (Tex.Cr.App.1986).

---

**6.** In his brief for the State the district attorney asserts that this Court requires jeopardy questions be decided under the "strict construction test for jeopardy questions [provided] in *Blockburger* ... and adopted by the *McWilliams* decision." It is becoming clearer all the time that the Court erred in adopting the *"Blockburger* test" to resolve jeopardy problems. The simplest reason is that socalled test is purely a rule of statutory construction "when the same act or transaction constitutes *a violation of TWO distinct statutory provisions."* See *Garrett v. U.S.,* 471 U.S. ——, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985): *Blockburger* rule is not controlling when legislative intent is clear, and to contend otherwise would convert "what is essentially a factual inquiry as to legislative intent into a conclusive presumption of law," *id.,* 105 S.Ct. at 2412. Of course, that is precisely what *McWilliams* did. There is no reason to attempt an analysis under *Blockburger* to resolve a problem of *two victims of criminal conduct denounced by a SINGLE statute. McWilliams-Blockburger* has absolutely no bearing whatsoever on our problem.